[Civ. No. 12266.   Second Appellate District, Division One.—February 7, 1941.]

DICK PARIGIAN et al., Appellants, v. CITIZENS NATIONAL TRUST & SAVINGS BANK OF LOS ANGELES (a National Banking Association) et al., Defendants and Respondents; BEACH D. LYON, as Administrator With Will Annexed, etc., Intervenor and Respondent.

Y. B. Arsen for Appellants.

Russ Avery, Harmel L. Pratt and William B. Gilroy for Respondents.

WHITE, J.—This appeal is prosecuted from a judgment entered upon an order granting a nonsuit at the conclusion of plaintiffs' case. There is also an attempted appeal from the order granting such nonsuit. The pertinent facts necessary for an understanding of the issues in this case are that Homer Laughlin was the owner of a certain building in downtown Los Angeles, the ground floor and basement of which was in the main occupied by the Grand Central Public Market. On March 11, 1929, a contract was executed between Mr. Laughlin and defendant C. A. Goss, under the provisions of which the latter was empowered to enter into contracts for subleases of stalls in the aforesaid market, the terms of which subleases, however, were not to commence until November 1, 1939, more that ten years after the execution of the Laughlin-Goss contract. Pursuant to the terms of the main contract, each prospective sublessee was required to pay what was characterized as a "bonus" or "consideration" for such sublease, which amounts were specified in a schedule attached to the Laughlin-Goss contract, in which was also contained the respective interests of Laughlin and Goss in such payments.

The contracts with which we are here concerned, being three in number, were executed in May and June, 1930, between plaintiffs herein and defendant Goss, the latter of whom was acting under the rights and authority conferred upon him by and through his contract with Mr. Laughlin, owner of the real property in question. These contracts were each denominated "agreement and obligation for lease", and attached to each contract was a sublease for the particular stall named therein, which said sublease was to take effect upon November 1, 1939. At the outset the contracts recited that "as a bonus and in sole consideration of the execution and delivery in escrow, as hereinafter stipulated, by C. A. Goss, hereinafter called the Lessor, of that certain lease whereby the Lessor has leased unto the maker hereof that certain stall or floor space designated as follows . . . " (there is then set forth a description of the demised floor space) " . . . we or either of us promise to pay to the Lessor, at the Citizens National Trust & Savings Bank . . . the sum of . . . ". (Then follows a schedule of payments to be made until the total sum agreed upon was paid.) Then we find in the agreement the following pertinent paragraphs:

"Said lease so executed shall be deposited with this agreement in the aforesaid Bank and said Bank shall deliver the same to the maker hereof upon full payment of all amounts of principal and interest to become due hereunder.

"In the event of the failure of the maker hereof to make the payments of principal and interest strictly in the time and manner hereinbefore stipulated or to comply with any of the provisions hereof, this agreement shall forthwith terminate and all money paid hereunder prior thereto shall be retained by the Lessor as liquidated damage for the breach hereof and the lease executed and delivered to said Bank hereunder shall be returned to the Lessor by said Bank for cancellation. Time is expressly made the essence hereof.

"In case the Lessor shall be unable to deliver possession of the leased premises at the time fixed in said lease because of fire, inevitable accident or other casualty he shall have a reasonable time in which to rebuild or repair the premises, during which time all rental under said lease shall be abated, or he may, at his option, be relieved from any and all liability hereunder upon repayment to the maker, without interest, of the amount of the bonus and consideration paid hereunder; in case the Lessor shall fail to deliver possession of the premises for any reason not hereinbefore stated, without fault of the maker hereof, he shall be relieved from any and all liability hereunder upon repayment to the maker, without interest, of the amount of bonus and consideration paid hereunder.

"No sale, assignment, hypothecation, pledge or other transfer of the interest of the maker hereunder, by operation of law, or otherwise, shall be made without the written consent of the Lessor, in each case first had and obtained, and any such sale, assignment, hypothecation, pledge or other transfer shall be null and void, and shall *ipso facto* act as a forfeiture of all rights granted by the Lessor hereunder. Neither this agreement and obligation, nor any interest in the premises hereunder, shall be deemed an asset in any Bankruptcy or Receivership proceedings, and all rights of the maker hereof shall forthwith terminate upon the institution of any such proceedings.

" . . .

*"It is distinctly understood and agreed that all amounts paid by the maker under the terms hereof are and shall be*

*solely as a bonus for and in consideration of the execution and delivery of the said lease and do not and shall not be or constitute any part or portion of the rentals to be paid by Lessee under the terms and conditions of said lease. . . . "*

Each "agreement and obligation for lease", with its accompanying sublease, was assigned in writing to the defendant bank, and all payments designated in the agreement as "bonus" or "consideration" payments were made to the bank. The bank in turn was required to dispose of these funds in accordance with the provisions of the contract between defendant Goss and Homer Laughlin above referred to, that is, the bank was to pay these funds over to Mr. Laughlin until he had received a certain sum from all the prospective tenants in the market, whereupon the balance of the bonus or consideration payments was to be divided between Mr. Laughlin and Mr. Goss. If Mr. Goss was able to procure contracts and subleases for a certain specified proportion of the market by a certain time, his interest in the market and in the contracts and leases he obtained was to continue in accordance with the terms of his contract with Mr. Laughlin; otherwise, his interest was to cease and terminate. In either event, the parties who entered into the various contracts for subleases would be protected; and if they paid the full amount of the required bonus or consideration, their subleases would thereupon be delivered to them by the defendant bank.

Under their contracts the plaintiffs were obligated to pay, between the date of execution thereof in May and June, 1930, and the delivery to them of the subleases, the sum of approximately $18,000, upon which they actually paid $2,400, the last payment having been made on February 26, 1932. After plaintiffs ceased making installment payments on their contracts, no action was taken by defendants, and matters remained *in statu quo* until the instant action was commenced.

The complaint, which was filed in February, 1936, contained four counts. In the first thereof it was alleged that within four years last past defendants became indebted to the plaintiffs for money had and received by the former as trustees for the use and benefit of plaintiffs; that the terms of said trust enjoined upon defendants the duty and obligation of repaying to plaintiffs on demand the sum of $3,070, but that notwithstanding such demand defendants refused to repay any part of said sum. By the second count plaintiffs sought

a recovery as for money had and received. The third count alleged an indebtedness of $3,070 ''on an open and current book account''; while the fourth and final count claimed the amount of money previously mentioned upon the basis of an account stated. Defendant bank by its answer denied the material allegations contained in each count of the complaint. Epitomizing the defendant bank's affirmative defenses, it was by it alleged that plaintiffs' cause of action was one for the recovery of payments made as a bonus or in consideration of the execution and delivery in escrow of the subleases of stalls in the market; further, that plaintiffs having made payment to defendants totaling $2,400 and the bank having fully performed all the conditions precedent required of it, while plaintiffs had breached the covenants of the contract, the latter were in default. In other words, that while the plaintiffs had paid part of the consideration called for by their agreements, they had failed to pay the balance amounting to approximately $16,000. It was also set forth in the answer of the bank, and undenied, that the contracts to enter into the subleases provided as follows:

''It is understood that this agreement and obligation will be assigned by Lessor to the Citizens National Trust & Savings Bank, as trustee, and that all payments made by the maker under the terms hereof shall be made to said Bank in the City of Los Angeles, State of California, at the Broadway Branch.''

Also at the bottom of said contracts there appeared a printed form of assignment, as follows:

''For value received, I hereby assign all my right, title and interest in the within and foregoing obligation and agreement to the Citizens National Trust & Savings Bank of Los Angeles, California, as Trustee, to be held by such trustee under the terms and conditions of a certain contract between Homer Laughlin and Lessor of date March 11, 1929.''

It was also alleged that the subleases executed by plaintiffs contained similar provisions, to wit, that the subleases should be assigned to the defendant bank as trustee, to be held by it under the terms and provisions of the contract between Mr. Laughlin and Mr. Goss. Defendant bank further alleged that all payments made by the plaintiffs were accepted by defendant bank in its capacity as trustee and were disbursed by it according to the terms of the contract between Laughlin

and Goss dated March 11, 1929, with full knowledge thereof on the part of the plaintiffs; and that none of said moneys so paid by plaintiffs was in the possession of defendant bank. The bank further pleaded that the cause of action set forth in the complaint was barred by virtue of section 337, subdivisions 1 and 2, section 338, subdivision 4, section 339, subdivision 1, and section 343 of the Code of Civil Procedure.

By his answer defendant Goss denied the allegations of plaintiffs' complaint, and by way of further answering the same denied that either he or his codefendant bank as trustee or otherwise were indebted to plaintiffs in any sum whatsoever, and alleged that the only agreement between himself and plaintiffs were the "agreements and obligations for leases" copies of which were attached to defendant Goss' answer. Finally, he pleaded that plaintiffs failed to separately state their separate and distinct causes of action, by reason of which the court was without jurisdiction of any of the alleged causes of action.

The complaint in intervention filed by Beach D. Lyon as administrator with the will annexed of the estate of Homer Laughlin, deceased, is the same as the answer of defendant bank.

The first ground of appeal urged by appellants is that the court erred in holding that the contracts were self-executing and that default occurred automatically. We perceive no such ruling in the record, but if we assume the existence of such a ruling it does not appear to us to be material, because respondents took no action relative to the appellants' default, nor did the former ask to terminate the contracts. In fact there is contained in the record an offer made by respondents at the trial to reinstate the contracts if appellants would pay the delinquent payments due thereon. ■ Therefore the question presented is whether the covenants of the agreements with which we are here concerned contemplated the payment of the moneys as a mere deposit by way of security to insure the faithful performance of appellants' covenants under the subleases, or whether such sums were paid by appellants as a bonus or an independent consideration to induce the lessor to make the subleases. A mere reading of the terms of the agreement irrefutably establishes the fact that the money was paid as a bonus or consideration for the execution of the subleases. In plain and unequivocal language the

agreements so provide, and further direct that the subleases, after execution, be placed with respondent bank to be delivered by the latter to appellants only "upon full payment of all amounts of principal and interest to become due hereunder". The money having been paid as a separate consideration and to induce the lessor to enter into the subleases, it amounted to a direct payment of money and was not a deposit of security. Therefore, when termination of the agreement was brought about by the conduct of the sublessees, and without any wrongful act of the lessor, the advance payments made by the sublessees cannot be recovered by them. (*Wetzler* v. *Patterson,* 73 Cal. App. 527 [238 Pac. 1077]; *Curtis* v. *Arnold,* 43 Cal. App. 97 [184 Pac. 510].)

Appellants assert that the terms of the contracts providing that in case of default the money paid was to be retained as liquidated damages, are void under section 1670 of the Civil Code, and that therefore in case of default the sum so paid cannot be retained. But we think it clear that when examined in connection with the explicit provisions of the contracts hereinbefore set forth, coupled with the fact that the subleases were not to be delivered until the contracts were fully performed, it must be held that the money was paid as a bonus or consideration for the execution of the subleases, and consequently, when the lessees defaulted in their payments the moneys already paid in belonged to the lessor. Furthermore, after the lessees' breach of their contract to pay under the aforesaid agreements, the lessor had the right, resting upon the contract, to remain inactive and yet retain the moneys theretofore paid by the lessees. Consequently, it is of no moment whether or not the contracts declare that such moneys should upon breach be forfeited as liquidated damages. Where, as here, the lessor had not abandoned the contracts or defaulted therein, the lessees could not elect to consider the contracts at an end and recover what they had paid. In the case at bar the payment of the final installment amounts under the contracts, at the time and in the manner agreed upon, was a condition precedent to the right of the lessees to demand the subleases. The parties hereto have made their agreements in clear and definite terms. Appellants contracted with respondent Goss as lessor that they would pay into respondent bank certain sums of money at certain times, and the agreement of the lessor is equally ex-

plicit that after full and due performance of such covenants on the part of appellant lessees, the subleases attached to the contracts would be delivered to appellants. Nowhere do we find in the contracts anything to indicate that the money paid was intended as security for the performance of the sublessees, but on the contrary, in plain and understandable language, as well as by the object sought to be achieved by the contracts, viz., delivery to appellants of the subleases, the conclusion is inescapable that the moneys paid were intended and regarded as a bonus or consideration for the subleases. The case of *Bacciocco* v. *Curtis*, 12 Cal. (2d) 109 [82 Pac. (2d) 385], relied upon by appellants, in reality at page 114 thereof lends support to respondents' contentions.

■ Appellants' claim that the court erred in rejecting evidence to prove a mutual rescission between appellants as lessees and respondent Goss as lessor, cannot be upheld. The record reveals no evidence or proffered evidence of a rescission of the contracts between appellants and respondent Goss. The only evidence we find in the record of any settlement between the last-mentioned parties had to do with another transaction between them, wholly apart from the contracts forming the basis of the instant litigation. Moreover, appellants knew and understood from the provisions of their agreements that the contracts had been assigned to respondent bank, and certainly the latter was not bound by any rescission negotiations or agreements between appellants and the bank's assignor, respondent Goss.

Neither was the respondent bank interested or involved in or bound by any negotiations between appellants and respondent Goss upon which appellants attempted to offer evidence in support of their claimed waiver of forfeiture. Moreover, as heretofore pointed out, respondents never sought cancellation or forfeiture under the contracts, but stood squarely upon the same, and based their right to retain the moneys paid thereunder upon its terms, covenants and conditions, indicating and offering at all times, even up to and during the progress of the trial, to go through with the contracts if appellants would bring the delinquent installment payments up to date.

■ The court did not err in refusing to permit appellants to introduce evidence of conversations and promises allegedly made to them by respondent Goss at the time of and prior to

the execution of the contract. It requires no citation of authority for the statement that in the absence of fraud, mistake, misrepresentation or accident, the negotiations and agreements prior to making the contract are deemed merged in the contract, and evidence of such prior negotiations is not admissible.

■ The trial court was also correct in denying to appellants the right to explain by parol evidence the terms of the contracts and an alleged understanding between the parties concerning the meaning of such terms and the effect of the same, either before or after the execution thereof. What this court said in *County National Bank & Trust Co.* v. *Investment Corp., ante,* pp. 449, 504 [109 Pac. (2d) 368], is controlling here: "Both the agreement of the broker and the lease and option contract appear upon their face to be a complete statement of the undertakings of the respective parties thereto, without any ambiguity or uncertainty as to their several legal obligations. In the absence of any charge of fraud, mistake or accident, the language of each contract being clear, explicit, certain, and not involving an absurdity, the trial court was justified in interpreting it and ascertaining the intention of the parties from the language thereof. (Civ. Code, secs. 1638, 1639, 1640.) The instant case does not present circumstances which justify the application of any exception to the parol evidence rule."

■ Appellants' contention that they should have been permitted to introduce evidence that subsequent to the execution of the contracts respondent Goss told appellants that he himself had not been able to obtain the master lease upon which his subleases to them were predicated, finds a complete answer in the fact, heretofore set forth, that respondents, including Goss and the administrator of the estate of the owner of the premises, at all times before and during the trial agreed to go through with the contracts and deliver the subleases to appellants if they would pay the amounts due on their contracts.

■ The attempted appeal from the order granting the motion for a nonsuit is dismissed.

For the reasons herein stated the judgment is affirmed.

York, P. J., and Doran, J., concurred.