[Civ. No. 13909. Second Dist., Div. One. Apr. 12, 1943.]

Estate of SARAH RABINOWITZ, Deceased. SOL ROB-
BINS, Appellant, v. ROSE SALLY NEUMANN et al.,
Respondents.

Monte C. Fiscus and Eldred L. Eaton for Appellant.

Irwin R. Buchalter and Jerome Weber for Respondents.

WHITE, J.—Sarah Rabinowitz died July 3, 1940, leaving as her survivors nine children. On May 26, 1938, some two years prior to her demise, she made and executed her last will and testament disposing of an estate valued at approximately $16,593.27, and by the terms of which will she devised certain of her property to one of her daughters, Betty Kuller, and the latter's husband, Ben Kuller; to another son, Dave Robbins, and the rest and residue of the estate was devised to another son, Jake M. Rabinowitz and Rose Sally Neumann, a daughter, the executrix herein. The remaining five children were disinherited.

On March 18, 1941, Sol Robbins, a son of the decedent, not mentioned in the will, filed his petition of contest and for grounds thereof alleged (1) incompetency; (2) undue influence; and (3) fraud. After issue was joined the cause came on for trial May 22, 1942, before the court sitting with a jury. At the conclusion of plaintiff's case the court granted a motion for nonsuit. From the order granting such motion and from the judgment entered thereon, plaintiff prosecutes this appeal.

As a first ground of appeal it is urged that the motion for nonsuit was fatally defective for the reason that the same failed to sufficiently point out the grounds upon which it was made or to state the particulars wherein the evidence was insufficient to establish contestant's case. This claim upon the part of appellant can not be sustained. From a reading of the record herein it is at once apparent that the proceedings had upon the hearing of the motion for a nonsuit were sufficient to inform the court and counsel of the specific ground of defendant's motion, viz., that "the evidence is totally lacking as to undue influence and as to unsound mind" and further that "there has been no evidence to substantiate fraud or any other element claimed by contestant to the will." Appellant's failure, when the motion was made, to complain that it was too general and not specific, coupled with the fact that the motion was argued by his counsel in the trial court, adds further weight to the assumption that the questions presented by the motion for a nonsuit were known to and understood by counsel for appellant. (*Curry* v. *Williams,* 109 Cal. App. 649 [293 P. 623] ; *Souza* v. *Underwriters' Fire Patrol,* 116 Cal.App. 13 [2 P.2d 200] ; *Appell* v. *Webster,* 27 Cal. App.2d 551 [81 P.2d 467].) The rule which requires a specific statement of the defects in the proof that plaintiff has made, when a motion for a nonsuit is presented, is for the

protection of the court and is applicable only to cases wherein the motion is denied, and not to an order granting it. ■ In the instance last mentioned, an order granting the motion will be sustained when it has been granted upon any ground, whether made a ground of the motion or not. (*Anchester* v. *Keck*, 214 Cal. 207, 212, 213 [4 P.2d 934] ; Opinion of the Supreme Court denying a hearing in *Inderbitzen* v. *Lane Hospital*, 124 Cal.App. 462, 469 [12 P.2d 744, 13 P.2d 905].)

■ Under firmly established and oft repeated rules, we must reverse the judgment herein, based as it is upon the granting of a nonsuit, unless we can say from a review of the evidence, disregarding the fact that there may be a conflict therein, and giving full credit only to that portion of the evidence which tends to support the allegations contained in plaintiff's petition for contest of will, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff, if such verdict were given. (*Estate of Flood*, 217 Cal. 763, 768 [21 P.2d 579] ; *Estate of Lances*, 216 Cal. 397 [14 P.2d 768].) In other words, where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the triers of fact. ■ In determining the motion for a nonsuit the trial court was not authorized to, nor can this court on appeal, either weigh the evidence or pass upon the credibility of witnesses.

■ Viewing the testimony in a light most favorable to appellant, the record discloses that the testatrix could neither read nor write the English language and could "speak English very little"; she "was a very sick woman most of her life. She had doctors and medicines and went to Rochester many times before"; that her memory was poor. That at the time the will was executed decedent's husband was living, but for several years prior thereto had been very ill, required constant care and attention from his wife and was confined to a wheel chair. That respondent executrix, one of the residuary legatees, was very friendly with her mother, visited her frequently—once every week or oftener. That respondent executrix consulted with her mother from time to time regarding the latter's business affairs. That after consulting with her father and mother on numerous occasions concerning the execution of a will by her mother, respondent executrix communicated with the attorney who prepared the will and made

an appointment for him to come to the home of her parents; that she discussed with such attorney the matter of preparing the will. That in the conversations between respondent executrix and her mother the latter expressed herself as desiring "all her children and the grandchildren to benefit from her estate." That while respondent executrix was present in the room at all times when the attorney was at her parents' home, she at no time gave any instructions to the attorney concerning the contents of the will and never made any suggestions as to the manner in which the mother's property should be disposed of. That the facts as to the property and disposition thereof in the will were "primarily" given by her father to the lawyer. That the conversations between the father, mother and the attorney were partially in English and partly in Jewish. The respondent executrix also testified "my mother wanted Jay (meaning her brother Jake M. Rabinowitz) and I to look after things. She wanted all her children and grandchildren to get something." When asked what her mother said to the attorney with reference to excluding any of the children from the will, respondent executrix replied at the trial "I did not hear mother tell the attorney to exclude my brother Sol and my brother Dave from receiving any of the proceeds of her estate. She didn't tell him to exclude anyone." Then, in reply to the question "What did she tell him?," the witness replied "The will speaks for itself. The provisions that she made with me verbally, she wanted things arranged so my brother Jay and myself could take care of the estate for her." Asked whether she was "quite positive your mother never gave him (the attorney) any instructions to cut your brother Dave and your brother Sol out of the will" the witness replied "to my knowledge she didn't give any instructions to cut them out." It is also in evidence that at the time the will was read to the decedent "there was further discussion of the fact that the will was not meant to be a specific distribution of mother's estate, but that my brother Jay and myself would take care of that." When the court inquired as to "what was said as to the way you two would take care of it," the witness replied "and according to various discussions mother and I had had pertaining to her estate. As I said before, she wanted each of her children and each of her grandchildren to benefit from the residue of her estate, which they will do if we finish this." The evidence clearly indicates that the testatrix was on friendly terms with all of her children.

It is conceded by appellant that the evidence is sufficient to establish the mental and physical competency of the testatrix to execute the will in question, and upon this appeal he relies solely upon the claim that the evidence was sufficient to establish a prima facie case of undue influence and fraud that should have been presented to the jury for determination.

Appellant urges that the will in question is upon its face an unnatural and unjust one. Insofar as this claim is concerned, we are first of all confronted with the fact that every person of sound mind, over the age of eighteen years, may dispose of his or her separate property by will (sec. 20, Prob. Code). In other words, the property belongs to the maker of the will and he or she may dispose of it as he thinks fit without regard to the views of juries or courts. In the minds of others than the testator, the naturalness or justice of the document is a matter of opinion and where the testator is competent, and undue influence or fraud is absent, it is the desires of the maker of the will that must prevail and not the opinions of a court or jury. (*Estate of Nolan*, 25 Cal.App.2d 738 [78 P.2d 456].) By an unbroken line of authorities in this state, it is firmly established that however unnatural or unjust a will may appear to be, and however much at variance with expressions by the testator concerning relatives or the natural objects of his bounty, the testamentary document may not be held invalid on the ground of undue influence unless there be a showing of some sort of pressure which overpowered the mind and mastered the volition of the testator at the very moment of execution. (*Estate of Clark*, 170 Cal. 418, 424 [149 P. 828]; *Estate of Carithers*, 156 Cal. 422, 428, [105 P. 127]; *Estate of Gleason*, 164 Cal. 756, 765 [130 P. 872]; *Estate of Lavinburg*, 161 Cal. 536, 543 [119 P. 915].)

Appellant herein, however, relies upon an equally well established exception to this general rule and which is to the effect that where one who unduly profits by the will as a beneficiary thereunder, sustains a confidential relation to the testator, and has actually participated in procuring the execution of the will, the burden is on such person to show that the will was not induced by coercion, undue influence or fraud. As pointed out in *Estate of Higgins*, 156 Cal. 257, 261 [104 P. 6], a "presumption of undue influence" arises from proof of the existence of a confidential relation between the

testator and such a beneficiary, "coupled with activity on the part of the latter in the preparation of the will." As we view the record in the instant case, it shows very considerable activity upon the part of respondent executrix who is one of the residuary legatees. The latter counselled with and advised her mother in business matters; on several occasions she discussed with her mother the making of a will and the provisions thereof; she procured the attorney who drew the will and was present at all times when the contents of the testamentary document were discussed as well as when it was executed. The contents of the will were "primarily" dictated by the husband of the testatrix but in the presence of respondent executrix. Furthermore, notwithstanding constant declarations on the part of the decedent that she desired all of her children and grandchildren to share in her estate, the will as executed disinherited a majority of her children and bequeathed nothing to her grandchildren.

In an effort to overcome any inferences of undue influence upon her part, respondent executrix asserts that while the record points unerringly to the fact that the testatrix desired all of her children and grandchildren to benefit from her estate, that the respondent executrix and her brother Jay, the other residuary legatee, "were to take care of this." We are not unmindful of the rule which holds that the validity of a will is not imperiled when the same is executed so as to give all or a substantial part of the estate to one beneficiary on the latter's promise, honestly made, to carry out the wishes of the testator concerning the intended beneficiaries of the estate. It has been held that it can not be said that a will is procured by fraud or undue influence when executed upon the faith of such a promise made in good faith and with an honest intention to carry out such promise. (*Estate of Everts,* 163 Cal. 449, 454 [125 P. 1059].) As was said in the case just cited "If, after the death of the testatrix, the donee fails or refuses to perform the promise, a different question arises, and, although the will stands unaffected, the donee and the property may be charged with a trust in favor of the intended beneficiaries (citing cases)." However, in the instant case, persistent efforts on the part of appellant's counsel to elicit from respondent executrix what wishes were expressed by the testatrix concerning the intended beneficiaries of the estate, were effectually blocked by objections which were sustained by the court, who finally said "I have ruled three times now that you can not go into that. I insist that

you do not ask any further questions on that subject-matter.'' These rulings by the court were erroneous and prejudicial. The contestant was entitled, under the facts here present, to inquire of the witness as to what desires were expressed by her mother and whether the witness and her brother, Jay, intended to carry out such expressed wishes of the testatrix regarding the intended beneficiaries of the estate (*Estate of Everts, supra*). As the record now stands we are unable to determine the validity of the will upon the theory relied upon by respondent and passed upon in *Estate of Everts, supra*. It is impossible to determine what wishes were expressed by the testatrix and whether the beneficiary under the will, to whom such expressions were made, promised to carry out the same and intended to keep that promise. So far as the record herein shows, we do not hesitate to say that the question of whether the execution of the will was procured by fraud or undue influence was one upon which different conclusions may be reasonably drawn by different minds from all the available evidence, and therefore, the decision thereon should have been left to the triers of fact under proper instructions by the court.

It should be understood that throughout this opinion we have taken the evidence most strongly in appellant's favor, as we are bound to do where an appeal is taken after the granting of a nonsuit. We wish it understood that we are expressing no opinion as to the weight of the evidence or its truth or falsity.

 The attempted appeal from the order granting a nonsuit is dismissed for the reason that an appeal from such order is not authorized by law (sec. 963, Code of Civ. Proc.; sec. 1240, Prob. Code; *National Auto Insurance Co.* v. *Cunningham*, 41 Cal.App.2d 828, 833 [107 P.2d. 643]; *Parigian* v. *Citizens Nat. T. & S. Bank*, 42 Cal.App.2d 773, 782 [110 P.2d 117].)

For the reasons herein stated, the judgment appealed from is reversed and the cause remanded for a new trial in conformity with the views herein expressed.

York, P. J., and Doran, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 10, 1943.