JACOBS, Respondent, vs. GRIGSBY and others, Appellants.

*September 23—October 20, 1925.*

*Physicians and surgeons: Malpractice: Inserting radium capsule in patient's nose: String attached to capsule: Patient swal-lowing capsule and string: Shortness of string as proximate cause of injury: Question for jury: Expert testimony as to usual length of string: Excessive damages.*

1. The evidence in an action for malpractice, wherein it was al-leged that the negligence of the defendants in attaching a short string to a radium tube or capsule used in nasal treat-ment was the cause of plaintiff swallowing the tube, is *held* sufficient to support a verdict that the string was only two inches long.  p. 663.

2. The testimony of one of the defendants that he attached a string six and one-half inches long to the capsule and that he followed the usual and customary practice in all he did, sufficiently shows, by expert testimony, the usual practice as to the length of the string.  p. 666.

3. In view of the testimony of the attending physician that he knew the radium tube might pass down the nasal passage into the mouth, and common knowledge that a two-inch string could be swallowed more easily than a six-inch, the jury

Jacobs v. Grigsby, 187 Wis. 660.

could reasonably conclude that the shortness of the string was the proximate cause of the tube falling into plaintiff's mouth and being swallowed. p. 666.
4. Where two years after the injury plaintiff was still suffering pain, probably due to adhesions from an operation performed to remove the capsule, an award of $3,000 will not be disturbed as excessive after its approval by the trial court. p. 667.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

Action for malpractice. One of the defendants in treating plaintiff for a nasal trouble used a silver capsule containing radium. The capsule had a string attached to it. While packing the capsule in the proper position in the nose it slipped away from him, dropped into the plaintiff's mouth, and she swallowed it. In order to prevent serious injury to the plaintiff by reason of the capsule being swallowed an operation was immediately performed, and it is for the pain and suffering and damages resulting from this operation that plaintiff brings the action. It is claimed on behalf of the plaintiff that the doctor was negligent because he used too short a string attached to the capsule. It is undisputed that he first treated the left nostril of the plaintiff and that he then had attached to it a string five or six inches in length. After a treatment of a couple of hours he removed the capsule and began to insert it in the right nostril. It is the claim of plaintiff that in cutting off the gauze which was used in the packing he also cut off the string to a length not exceeding a couple of inches, and it is claimed because of the shortness of the string the capsule slipped away from him and was swallowed. On behalf of defendant it is claimed that a string of the ordinary, usual length of six or six and a half inches was used. The jury found by a special verdict, the form of which was agreed upon by both parties: (1) In giving the plaintiff's right nostril the treatment in question the defendant failed to have attached to the radium capsule a string of the usual and customary

length usually used by doctors in good standing of the same school of medicine and surgery in the city of Kenosha and similar localities under like or similar circumstances, having due regard to the advanced state of medical and surgical science at the time.    (2) Such failure to use a string of the usual and customary length attached to the capsule was the proximate cause of the capsule slipping down the plaintiff's throat.    (3) The defendant ought, in the exercise of that degree of care and skill usually exercised by doctors in good standing of the same school of medicine and surgery in the city of Kenosha and similar localities, under like or similar circumstances, having regard to the advanced state of medical and surgical science at the time, reasonably to have anticipated that an injury to plaintiff would be the natural and probable consequence of the failure to use a string of the customary and usual length; and (4) damages in the sum of $3,000.    Upon this verdict the court entered judgment in favor of the plaintiff, and the defendants appealed.

The cause was submitted for the appellants on a brief signed by *Lines, Spooner & Quarles* of Milwaukee, and for the respondent on that of *Robert V. Baker* of Kenosha.

VINJE, C. J.    The brief of appellants contains a statement of a number of well established principles of law applicable to malpractice cases, none of which need be discussed because they do not materially affect the questions presented by the facts in this case.    The questions which control this case are these:  (1) What was the length of the string used by defendant *Grigsby?*    (2) What is the customary length of string used for the purposes for which this was used? and (3) Could the jury reasonably find that a string not to exceed two inches in length was the proximate cause of the injury to plaintiff?

Upon the question of the length of the string the testimony is in sharp conflict.    Dr. Richards, who performed the operation upon the plaintiff to remove the radium capsule from her stomach, testified that the string was six and

one-half inches in length and that he measured it after removing it. *Dr. Grigsby* testified the string was six and one-fourth inches in length, and that he also measured it after the removal of the string from plaintiff's stomach. It is somewhat significant that the string was not produced upon the trial. Why it was not we are not advised.

*Rose Jacobs,* the plaintiff, testified that the string was lying upon the table after the treatment of the left nostril and it was only about an inch and a half in length, but she also says that she didn't pay very close attention as to its exact length. Pauline Lippert, a nurse at the hospital, testified that she went into the operating room just as they were completing the operation. The plaintiff was then on the operating table and the tube of radium was removed just as she came into the operating room. It was taken by the surgical nurse and put on a tray. "The tube itself," she says, "was between an inch and three quarters of an inch long, and the string that was on the tube was, as near as I remember, I should say an inch and a half or two inches long." Miss Huxhold was a graduate surgical nurse at the hospital and an attendant during the operation. She testified that as far as she was able to judge the capsule itself was about three quarters of an inch long and the string attached was not more than two inches. She says: "I cannot recall whether it was an inch and three quarters or two inches long. I am not positive about that." Upon further examination she said: "I am not positive whether it was an inch and three quarters or two inches long. I say I don't think it was any longer than that. That is my best judgment."

Upon this state of the testimony it cannot be said that the verdict is without evidence to support it. The length was peculiarly a question for the jury to decide upon such conflicting testimony.

As to the question what is the customary length of string used for the purposes for which this was used, it is claimed on behalf of defendants that there is no expert testimony

showing what the usual custom or practice is, and that in the absence of such testimony the jury as laymen cannot say that the string was shorter than what good practice required. It will be necessary, in order to determine the force of this contention, to examine the testimony of the defendant who performed the nasal treatment, namely *Dr. Grigsby.* He testifies as to what he did as follows:

" I placed the radium first in the left nostril. The radium was in a capsule in a half-millimeter sterling silver tube. It amounts to the shape of an ordinary pill capsule, except it is smaller. It contains fifty milligrams of the radium element. The capsule is, approximately, one centimeter, a little less than half an inch; three eighths of an inch, very closely. It was about one sixteenth to one. eighth of an inch in thickness. My technique that I used in placing this radium is as follows: The technique that we have always used at Rochester was to pack the radium in place with vaseline gauze, using the gauze merely as a medium for holding it in the position in which we want it, so it wouldn't vary in its position; and also with the idea that with the vaseline it would come out of the nose without bruising the nose. Attached to the loop on one end of the radium capsule we tie some sort of string, ordinarily black because we can see it, so that we may be able to see the string to aid us for convenience in removing it when we have completed the treatment. We take what we call bayonet forceps, and place the radium up in the position in which we want it, carry the vaseline gauze up against it, holding it in the position in which we want it; packing the upper middle meatus and lower meatus of the nose full, so that the radium is held in one position in the nose for the time of treatment. This radium was put in there in this way, and left for a period of two hours, constituting what we call a medical treatment of 100 milligram hours treatment, in the left side of the nose. The capsule is put in first. Then the packing is put in. A string was attached to this capsule. When I first put the string on it was possibly twelve inches long. About that. That was its length before it went into the left nostril. After I got it into the left nostril, as I usually do I cut it off to the position which I find that the nose

Jacobs v. Grigsby, 187 Wis. 660.

needs to carry sufficient string out to find it easily on the side of the face. After I had fixed it on one side it was approximately six to six and a half inches in length, as I judged it at that time. The purpose of the string was to enable us to find the radium to remove it easily, that is, something to make it easily removable. As to whether I fasten the string to anything after the tube is placed in the nostril and have finished the packing,—I usually take adhesive tape and fasten it to the side of the face so as it is easily located. I did that after I had packed the left nostril. That remained then exactly two hours. As to what I did then,—I removed it from that side, laid it over on my treatment table on a sterile towel, and prepared to treat the right side of the nose. I placed the radium capsule in the right side up into position. The string was attached at that time and was six and one-fourth inches long. I measured it later; after it was removed surgically from the stomach it measured six and one-fourth inches long. After I had placed this capsule in the right nostril, I took my vaseline gauze to pack it up into position in which it was to be held. In the process of packing, holding it up in this position (indicating), the radium, in some manner, became dislodged and I noticed that the patient swallowed. The string disappeared, the black string. I removed my packing to look for it. At the time I removed my packing I had already put in a little more than half of the vaseline gauze packing, holding it up in the position I wanted it. I had not finished the packing. The purpose of this packing was to hold the radium in the position in which I placed it, to keep it in contact with the tissues we wanted it in contact with, so that it would remain in one location."

He further testified:

"I think I did this work on *Mrs. Jacobs* in the usual and customary manner that physicians and surgeons of good standing in this and similar localities carry on that class of work, having due regard to the advanced state of medical science."

We have quoted *Dr. Grigsby's* testimony quite at length in order to show what is the medical practice with reference to the length of string that is customarily used. It appears

from his testimony that a string six or six and a half inches in length is customarily used, and he testified that upon this occasion he used such length of string. It therefore appears in the case by the defendants' own testimony what the practice is with reference to the length of string used. And it appears that if the jury were warranted in finding that the length of string was not more than that testified to by the nurses and the plaintiff herself, that there was a wide departure from the length of string customarily used. His testimony that he used a string about six and a half inches long, and his further testimony that he followed the usual and customary practice in all that he did, sufficiently establishes the fact by expert testimony that a string for such a purpose is customarily of a length of about six and a half inches. Therefore the contention of the appellants that there is no expert testimony as to what the usual practice is as to the length of string is not borne out by the record. Defendants themselves supplied the testimony the plaintiff failed to introduce.

The claim that the jury could not say that the shortness of the string was the proximate cause of its falling into plaintiff's mouth and being swallowed is not tenable, first, because it is a matter of common knowledge that a capsule such as was used might pull up a string two inches long when beginning to fall backwards into plaintiff's mouth, but might not pull up a string six and one half inches long—not to mention the much greater probability of the doctor being able to catch the string in the latter case, even if it was being pulled up, before it completely disappeared; and second, because it is a matter of common knowledge that a string two inches long might readily be swallowed under the circumstances existing, while a string six and one-half inches long might not be swallowed at all, or at any rate before it could be caught and held.

The doctor testified that he knew the capsule might pass down the nasal passage into the mouth. Knowing that,

Jacobs v. Grigsby, 187 Wis. 660.

it seems to us he should have known that a string only two inches long was too short to safely prevent the capsule from so doing. At least we cannot say that twelve men may not reasonably come to such a conclusion.

It is in evidence that in addition to the pain and suffering and loss of time usually attendant upon such an operation as that performed upon the plaintiff, she continued to suffer more or less pain at the time of the trial, over two years later, probably due to adhesions, and that there was no surgical or medical relief for pain caused by such adhesions. The verdict was approved by the trial court, and we cannot disturb it as excessive.

*By the Court.*—Judgment affirmed.