FORTHOFER, APPELLANT, *v.* ARNOLD, APPELLEE.

(Decided February 24, 1938.)

*Messrs. Deutsch & Dilgren,* for appellant.
*Mr. G. A. Resek* and *Mr. D. W. Myers,* for appellee.

STEVENS, P. J. Plaintiff filed an action against the defendant, Dr. Russell Arnold, to recover damages by reason of the claimed malpractice of the defendant in the diagnosis and treatment of an alleged fractured skull of plaintiff.

At the conclusion of plaintiff's case in chief, defendant moved for a directed verdict in his favor, which motion was sustained by the trial court.

From the judgment entered upon the verdict so returned, an appeal on questions of law brings the case before this court.

The appellee has filed a motion in this court to strike

the bill of exceptions from the files. That motion is overruled.

The record discloses that on March 3, 1936, plaintiff, while laying tile in a ditch, was struck on the head by a falling tile; that he was taken to the defendant for examination and treatment; that the history of plaintiff's claimed injury was related to the defendant; that defendant examined plaintiff, found no objective evidence of injury, gave him some medicine and told him to go home, with the further instruction that he should not go back to work unless he felt better.

There is evidence that soon after the claimed injury plaintiff felt dizzy and nauseated, that he suffered pain, and that for a long time thereafter he was similarly affected. After the visit to the defendant, plaintiff returned to work on the following day, but upon the day thereafter plaintiff claimed his pain had increased to such extent that the doctor was called at 9:30 in the morning, at which time he gave some liniment to plaintiff and instructed him not to return to work until the following Monday morning.

Plaintiff did return to work on the following Monday morning, and continued to work throughout the week, although he claimed he suffered pain during all that time and was scarcely able to work.

On Sunday of that week, plaintiff again went to the defendant, who, at that time, took his blood pressure, which was above normal, but it is claimed the doctor again advised him that he could return to work, which he did on the following Monday and continued to work until the Saturday thereafter. At that time he returned again to the doctor's office, and the plaintiff's wife demanded that an X-ray be taken of plaintiff's head. The doctor again took the plaintiff's blood pressure, which, upon this occasion, it is claimed, was higher than at the time of its previous taking.

The doctor, in pursuance of the demand of plaintiff's wife, then suggested that on Monday morning

plaintiff go to the hospital, where he would make arrangements to have the X-ray taken, and in accordance with that suggestion plaintiff did present himself at the hospital, and his head was X-rayed. He was confined to the hospital for thirteen days, during which time two spinal taps were made by the defendant, which were claimed by the plaintiff to have been very painful.

After his discharge from the hospital, he claimed that he had suffered permanent injuries as a result of the malpractice of the defendant, for which he was entitled to be compensated, and those claimed injuries formed the basis for the suit below.

It is alleged by plaintiff that the defendant doctor was negligent in his diagnosis of plaintiff's injury; that he was negligent in failing to promptly X-ray plaintiff's skull; that he was negligent in failing to apply the usual and recognized treatment in cases of skull fractures—namely, immobilizing the patient in bed with ice packs upon the head and heat at the feet; that the plaintiff suffered a hemorrhage of the brain and the doctor failed to prescribe a proper course of treatment to promptly check the hemorrhage and relieve the intracranial pressure; and that the defendant was negligent in applying liniment to a fractured skull, in advising the patient to return to work, and in the manner in which the surgery in making the spinal taps was performed.

The defendant admitted his employment by plaintiff, but alleged that the treatment accorded plaintiff was proper and adequate, and conformed to the standard of the community where he was located, and denied that he was negligent in any respect.

This being an action predicated upon the claimed malpractice of defendant, the rule by which the conduct of the defendant is to be judged is whether the defendant, in the performance of his service to plaintiff, either did some particular thing or things that physicians and surgeons of ordinary skill, care and

diligence would not have done under the same or similar circumstances, or failed or omitted to do some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would have done under the same or similar circumstances. *Hier* v. *Stites,* 91 Ohio St., 127, 110 N. E., 252; *Ault* v. *Hall,* 119 Ohio St., 422 (paragraph 7 of the syllabus), 164 N. E., 518, 60 A. L. R., 128.

There is, however, another element which has been considered in many cases as bearing upon the standard by which the defendant's conduct is to be judged. That element has been discussed in 21 Ruling Case Law, Physicians and Surgeons, Section 28, as follows:

"In an action for malpractice a physician or surgeon is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school, because a person professing to follow one system or school of medicine cannot be expected by his employer to practice any other, and if he performs the treatment with ordinary skill and care in accordance with his system, he is not answerable for bad results. * * *"

See also 37 L. R. A., 837, note VI *b.*

The plaintiff, in his effort to establish the claimed negligent conduct of the defendant, offered as expert witnesses two doctors of the osteopathic school, each of whom testified as to the treatment which he would have accorded plaintiff had he been called to attend plaintiff.

At the conclusion of plaintiff's case in chief, upon motion of the defendant, all of the expert testimony of said osteopathic physicians was withdrawn from the consideration of the jury, for the reason that the evidence of said osteopaths did not indicate that they possessed any knowledge whatsoever as to the standards of skill, care and diligence exercised by physicians and surgeons of the school of medicine to which the defendant belonged.

It is claimed by plaintiff that the trial court erred in withdrawing the expert testimony of said osteopathic physicians from the consideration of the jury; that the court erred in directing a verdict for the defendant; and that the court erred "in failing to permit the plaintiff to cross-examine the defendant, and by him establish that the acts complained of were negligent."

As to the first claim of plaintiff:

In malpractice actions it is a well recognized rule, and one which has the approval of this court, that the care, skill and diligence exercised by the defendant is to be judged by that standard of ordinary care which ordinarily is exercised by physicians and surgeons of the same school of medicine in the same general neighborhood, or in a similar locality.

It must be remembered that the injury which plaintiff claims he sustained was of such a nature as not to be recognized and understood by lay witnesses, but was one which required a high degree of expertness in the diagnosis and treatment thereof.

From our reading of the record in this case we find no evidence from which the jury could determine the standard of care, skill and diligence by which the defendant's conduct was to be judged. On that subject there was accordingly a failure of proof. Further, we find no credible evidence that plaintiff sustained a fractured skull.

The absence of such evidence justified the trial court in directing a verdict for the defendant. We find no error in the action of the trial court in withdrawing from the consideration of the jury the expert testimony of the osteopathic physicians.

The other claim of error urged by the appellant has to do with the refusal of the court to permit plaintiff to cross-examine the defendant, and by him establish that the acts complained of were negligent. It will be observed that the defendant was called by the plaintiff

for cross-examination under the statute, and was not called as plaintiff's own expert witness.

The theory underlying the calling of an adversary party for the cross-examination has been explained in *Langford* v. *Issenhuth*, 28 S. D., 451, 460, 134 N. W., 889, 892, as follows:

"It appears to us that the theory or statement that the adverse party is called for 'cross-examination' does not accurately express the intent of the statute, the purpose of which it seems, would be more clearly expressed by saying that because of the adversary character of the witness, the same rule as to leading questions and the like should apply as though the witness was under cross-examination or was an adverse witness under familiar rules. The statute seems to make this clear by providing that the testimony of a witness so called shall not bind the party calling him, and may be rebutted by other evidence, precisely as though the evidence had been elicited on proper cross-examination of the witness when called by the other party. With this fundamental idea of the purpose of the statute in mind, it would seem that the practical application of the statute would be rendered comparatively simple and free from difficulty. The right to call any such witness existed before the enactment of the statute, but the party calling him took the chance of being bound by his testimony, and could not impeach the witness by showing contradictory statements, or that the witness was unworthy of belief. The statute proceeds apparently on the theory that an adverse party thus called may speak the truth in favor of the party calling him, and thus end or shorten the case, and that such possibility is sufficient reason for changing the old rules, so far as parties to the action are concerned. A witness who is a party to the action is therefore called the same as any other witness to prove certain facts, and not for cross-examination. But, because he is deemed an adverse witness, the statute provides that the mode in which he is examined

may be that ordinarily employed in cross-examination. Confusion of thought arises when we try to conceive of an attempted cross-examination where there has been no direct examination. The statute is intended to permit leading questions to this class of witnesses to permit their impeachment by the party calling them, and the rebuttal of their testimony by other competent evidence.''

Having in mind that concept of the statutory permission to call an adversary party for cross-examination, we next consider the question as to whether plaintiff might establish by cross-examination of the defendant the standard of care, skill and diligence by which defendant's conduct was to be judged, and then establish by further cross-examination of defendant that the acts complained of were negligent. That question has been considered and passed upon by the Supreme Court of Idaho in the case of *Osborn* v. *Carey,* 24 Idaho, 158, 132 P., 967, the tenth paragraph of the syllabus of which is as follows:

''Where, in an action against a physician for malpractice, defendant is called by plaintiff for cross-examination under the provisions of Sessions Laws 1909, page 334, authorizing same, he may be cross-examined subject to the rules applicable to other witnesses, but plaintiff cannot make out his case in chief by expert opinion evidence secured from defendant on such cross-examination.''

This court is of the opinion that no error intervened when the trial court refused to permit the plaintiff to establish his case in chief by expert opinion evidence secured from the defendant on cross-examination.

Being of the opinion that no error prejudicial to the substantial rights of the plaintiff occurred in the trial of this case in the Court of Common Pleas, the judgment of that court will be affirmed.

*Judgment affirmed.*

WASHBURN and DOYLE, JJ., concur.