[L. A. No. 18684. In Bank. Dec. 18, 1943.]

LILLIAN F. TRINDLE, Appellant, v. O. W. WHEELER, Respondent.

Hahn, Graf & Ross for Appellant.

Fred O. Reed, Richard L. Kirtland and Henry E. Kappler for Respondent.

SHENK, J.—This is an appeal by the plaintiff from a judgment entered on a directed verdict for the defendant, a physician, in an action to recover damages for alleged negligence in the treatment of an ankle injury.

The plaintiff had been employed for over thirty-five years as a teacher in the schools at Indianapolis, Indiana. While spending her vacation with her sister in Riverside, California, she sprained and resprained her ankle. Some twenty years previously the same ankle had been broken and the X-ray revealed signs of enlargement and traumatic arthritis. When she sustained the recent sprains she consulted the defendant, who was practicing his profession in Riverside. He prescribed diathermy as treatment for the injury. He accompanied the plaintiff into the treatment room adjoining his office and instructed a nurse trained and experienced in such treatments to apply diathermy to the ankle at 3,000 milliamperes for twenty minutes. The plaintiff's shoe and stocking were removed, she was placed in a recumbent position on a bed, and the nurse proceeded to adjust the electrodes to the ankle. The electrodes were encased in rubber pads. A folded towel was wrapped around each electrode, and the plaintiff's ankle placed between them. The electrodes were held in position by small bags of sand. They were connected to the diathermy machine by wires. The nurse set the dial at 3,000 milliamperes for a twenty-minute treatment. Both the doctor and the nurse left the room and shut the door.

The plaintiff testified that she was given no instruction by the defendant or the nurse; that after the lapse of a few minutes the ankle became uncomfortably hot, and that when the heat had become unbearable she called for help. The defendant immediately entered the room and turned off the machine which at that point registered 3,500 milliamperes. Eight minutes had elapsed from the beginning of the treatment until the time when defendant turned off the machine. The machine in that time had jumped to 3,500 milliamperes. The plaintiff sustained a burn on her ankle about the size of

a half dollar or a dollar. According to the testimony of the defendant and his assistants a small table adjacent to the head of the bed on which plaintiff was lying was provided with a push button for the use of diathermy patients. The nurse testified that she pointed out the buzzer to the plaintiff and told her to call if the heat became uncomfortable, and that such instructions were customarily given to every diathermy patient. The plaintiff testified that the push button was not pointed out and that no such instruction was given to her.

The defendant and the nurses applied ointment to the burned area and bandaged the ankle. Defendant subsequently treated the burn until he believed it to be completely healed. Plaintiff does not contend that there was any negligence in diagnosis or in prescribing diathermy as treatment; nor did she offer any proof that the method of the treatment of the burn itself was improper. Her case depends entirely upon a showing of negligence by the defendant in administering the diathermic treatment whereby she suffered injury. That the plaintiff sustained some injury as the result of the treatment was established by the evidence. How much permanent disability is the result of the burn caused by the treatment and how much is due to injury or conditions which were not immediately under treatment by the defendant are not questions which require review on this appeal. The sole consideration is whether, disregarding conflicting evidence, and giving to the evidence tending to establish negligence in the administration of the treatment all the value to which it is legally entitled, there is evidence of sufficient substantiality to support a verdict in favor of the plaintiff. (*Estate of Lances,* 216 Cal. 397 [14 P.2d 768]; *Engstrom* v. *Auburn Auto Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059].)

█ The law requires that the physician shall have the degree of learning and skill ordinarily possessed by physicians of good standing practicing in the same locality and that he shall use ordinary care and diligence in applying that learning and skill to the treatment of his patient. █ Whether he has done so in a particular case is generally a question for experts and can be established only by their testimony unless the matter in issue is within the common knowledge of laymen. (*Engelking* v. *Carlson,* 13 Cal.2d 216 [88 P.2d 695].)

The plaintiff offered no testimony to establish the standard

of care in the application of diathermy prevailing in the community. Application of diathermy is by means of an electric modality which produces heat within a member of the body by the resistance offered to the passage of short waves between the electrodes placed on opposite sides of the member to be treated. The uncontradicted evidence introduced by the defendant showed that the physician or nurse administering the treatment must be made acquainted with the patient's tolerance to heat. Resistance to heat varies in individuals. (Herzog, Medical Jurisprudence, sec. 369.) The method of diathermic treatment is in contrast to the process of transference of energy or light waves emitted from the surface of an article, instrument or element, such as a hot water bottle, electric heating pad, heat lamp, X-ray or radium. Also diathermy, like X-ray and radium, may be said to be a recently developed method of treatment. Gray, in his discussion of X-ray and radium treatments, concludes: "It is obvious that X-ray and radium treatments are difficult to control, not only because of the considerable variation between the action of these agents upon different parts of the body, but also because of the difficulties in subjecting the patient to a known dosage. This field of treatment is still in its infancy. A doctor must proceed as best he can, and with the meager knowledge of this field available. Unfortunate results are bound to occur in spite of his best efforts. He cannot properly be held at fault if he has proceeded in accordance with the practice used by other men of like ability in his community." (Gray, Attorneys' Textbook of Medicine, 2d ed., p. 854.)

The testimony of the defendant's witnesses established that it was considered good practice in the community to leave the patient in the room unattended after the diathermy machine had been set at 3,000 milliamperes, which was the number of milliamperes applied in the treatment of the plaintiff's ankle, and the stop-clock at twenty minutes, as it was set by the nurse; provided, however, that a call device be available to the patient and that she be instructed to use it to summon the attendant if the heat should become uncomfortable.

The burden was upon the plaintiff to prove that the defendant was unskillful or negligent and that want of skill or care caused her injury. In support of the judgment on the directed verdict in his favor, the defendant contends that

the plaintiff, in order to establish her case, was required to introduce expert testimony concerning the standard of care and skill prevailing in the community, and that in the absence of such testimony introduced by her, she failed to present a case which the court was required to submit to the jury. It is unnecessary to determine on this appeal the question whether in such cases a plaintiff is required to introduce expert testimony as to the prevailing standard of care and skill. ▮ Regardless of whether or not the plaintiff here was so required, it is apparent that when the evidence was all in, she was entitled to rely upon the expert testimony which had· been introduced by the defendant; and in the absence of any such testimony offered by the plaintiff the court, on the motion for a directed verdict, was required to consider the evidence favorable to the plaintiff introduced by the defendant. On the question of the prevailing standard of care, therefore, it may be said there was no conflict, and the standard established by the defendant's witnesses was a proper guide for the court. ▮ But on the question of whether that standard of care was followed, there was a direct and substantial conflict in the evidence. The standard established showed that the instructions given a patient receiving diathermic treatment become an important factor in determining whether the defendant was negligent. If the plaintiff's testimony that no call button was pointed out to her and that she did not receive the required instruction be considered worthy of credence by the jury it is apparent that it would constitute sufficient evidence to support a verdict in her favor.

▮ The plaintiff invokes the doctrine of res ipsa loquitur, but it is unnecessary to decide whether it is or is not applicable under the facts of this case. Even if we assume that a burn does not usually result from careful treatment the benefit of the permissible inference is not necessary in support of her case. Considering the nature and method of operation of the diathermy apparatus, its characteristic tendency to increase milliamperage while in operation, and the attendant's dependency on the subjective reaction and oral information of the patient concerning the progress of the treatment, it becomes obvious that the plaintiff's testimony of what occurred, if believed by the jury, would be sufficient, without the aid of the inference, to support a verdict in her favor. Under the facts of this case, therefore, the questions of the defendant's violation of the standard of skill and care prevailing in the

336

community and of the plaintiff's alleged contributory negligence were for the jury's determination. (See *Wemett* v. *Mount,* 134 Or. 305 [292 P. 93].)

The judgment is reversed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.