[L. A. No. 18736. In Bank. Apr. 6, 1944.]

VERA LAWLESS, Appellant, v. A. A. CALAWAY et al., Respondents.

Julius Hansen and Rae B. Carter for Appellant.

Hadsell, Sweet, Ingalls & Carroll and Chester O. Hansen for Respondents.

GIBSON, C. J.—This is an appeal from a judgment of nonsuit entered in an action for malpractice which, it is

claimed, resulted in the death of plaintiff's minor son. In stating the facts we shall, in accordance with the settled rule in cases of nonsuit, disregard conflicts and consider the evidence most favorable to plaintiff.

On March 1, 1939, plaintiff's twelve-year-old son, Donald, suffered abdominal pains with attendant vomiting and diarrhea. The boy was then living with plaintiff's aunt, Mrs. Lashley, and on the following morning he was taken by her for treatment to defendant, a physician who had attended Donald since his birth. The defendant took the case history, which included a statement by Donald that he had eaten moldy bologna the previous day, examined the boy's abdomen by palpation and percussion, took his temperature and examined his chest and lungs. Defendant informed Mrs. Lashley that the boy probably had an attack of ptomaine poisoning, but he also stated "it sounds like we might have an attack of appendicitis." He recommended a diet, prescribed medicine for ptomaine poisoning and ordered the boy put to bed with an ice bag on his abdomen. On March 3 Mrs. Lashley informed defendant that the patient seemed better, but the next day he was removed to a hospital where blood and urine analyses were taken. The hospital record dated March 3, 1939, contained the following entry labeled working diagnosis: "After physical examination, ptomaine, due to eating molded biloni— Possible appendicitis involved." Defendant visited Donald once or twice a day while he was in the hospital. On March 7, defendant consulted Dr. Sciaroni, his office associate, who, after examining the patient, stated it looked like appendicitis and advised the continued use of ice packs. Due to a change in the boy's condition on March 9, defendant informed the family that an operation for appendicitis was advisable. Dr. Morgan, a surgeon, was then consulted. He examined the patient, diagnosed his condition as "Peritonitis, possibly due to appendicitis, retrocecal," and performed an operation with defendant's assistance. The boy died a few hours after the operation which disclosed that he had a ruptured appendix.

Plaintiff contends that (1) sufficient evidence was introduced to warrant a finding that defendant was negligent in his diagnosis and treatment of her son's illness, and that (2) the trial court committed prejudicial error in limiting the scope of the examination of defendant who was called as

an adverse witness pursuant to the provisions of section 2055 of the Code of Civil Procedure.

The law demands only that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and that he exercise ordinary care in applying such learning and skill to the treatment of his patient. (*Trindle* v. *Wheeler*, 23 Cal.2d 330, 333 [143 P.2d 932]; *Engelking* v. *Carlson*, 13 Cal.2d 216, 220 [88 P.2d 695]; *Callahan* v. *Hahnemann Hospital*, 1 Cal.2d 447, 458 [35 P.2d 536].) The same degree of responsibility is imposed in the making of a diagnosis as in the prescribing and administering of treatment. (*Patterson* v. *Marcus*, 203 Cal. 550, 552 [265 P. 222]; *Ries* v. *Reinard*, 47 Cal.App.2d 116, 119 [117 P.2d 386]; *Donahoo* v. *Lovas*, 105 Cal.App. 705, 712 [288 P. 698].) Ordinarily, a doctor's failure to possess or exercise the requisite learning or skill can be established only by the testimony of experts. (*Trindle* v. *Wheeler, supra; Engelking* v. *Carlson, supra; Callahan* v. *Hahnemann Hospital, supra; Bellandi* v. *Park Sanitarium Assn.*, 214 Cal. 472, 480 [6 P.2d 508].) Where, however, negligence on the part of a doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required since scientific enlightenment is not essential for the determination of an obvious fact. (*Ales* v. *Ryan*, 8 Cal.2d 82, 100 [64 P.2d 409]; *Barham* v. *Widing*, 210 Cal. 206, 214 [291 P. 173]; *McCollum* v. *Barr*, 38 Cal.App. 411, 427 [176 P. 463]; see *McBride* v. *Saylin*, 6 Cal.2d 134, 138 [56 P.2d 941]; *Rankin* v. *Mills*, 207 Cal. 438, 441 [278 P. 1044].)

Plaintiff first contends that the jury could have found defendant was negligent on the theory that after correctly diagnosing the ailment as appendicitis he failed to treat the patient therefor but instead treated him for ptomaine poisoning. The evidence does not substantiate plaintiff's premise. It clearly appears that although defendant at all times considered the possibility of appendicitis, he concluded, as a result of his examination, the presence of certain symptoms including diarrhea, and the history of the boy having eaten moldy bologna, that his patient was suffering from ptomaine poisoning, and prescribed accordingly.

Plaintiff next contends that the jury could have found that defendant was negligent in failing positively to

diagnose the case as appendicitis at an earlier date, and that such a finding could have been based on expert testimony as well as the common knowledge of the jurors. No expert testimony was introduced to show that in light of the case history of the patient, the symptoms manifested, and the facts disclosed by the examination, defendant was negligent in failing to diagnose the ailment as appendicitis at an earlier date. The only witnesses who appeared and could have qualified as experts were Dr. Morgan and the defendant. Dr. Morgan's testimony did not indicate or intimate that defendant's diagnosis was not consistent with what other doctors in the community would have arrived at under similar circumstances in the exercise of reasonable care. He testified principally as to his own conduct or course of action at a time when the defendant had diagnosed the case as appendicitis. Furthermore, the fact that another physician or surgeon might have elected to treat the case differently or use methods other than those employed by defendant does not of itself establish negligence. (*Jensen* v. *Findley*, 17 Cal. App.2d 536, 545 [62 P.2d 430].)

 Plaintiff argues that Dr. Morgan's testimony showed that the standard practice in the community required a blood count to be taken when appendicitis was suggested, that defendant failed to take a blood count, and that these facts would warrant a finding of negligence. The argument, however, does not find support in the record. In response to the question ''In any case, Doctor, suggesting the presence of appendicitis, in the exercise of that standard of degree of care in this community, is a blood count indicated?'' the witness replied: ''I cannot answer that yes or no; but I can answer it. Let me explain a few things. When we think of blood count as something which will indicate to us whether there is a pus condition somewhere or reaction to the system of an infection, it does not of itself indicate appendicitis. We take those counts just to verify our idea that there is an infection process in the system, but we do not depend upon it to say that we have appendicitis. I have tried to explain when we take counts and I will . . . also state a great majority of us do when some of us do not.'' Dr. Morgan did not say that a blood count should be taken for the purposes of diagnosis in all cases of possible appendicitis. Moreover, as previously noted, the patient's blood count was taken on

March 4, when he entered the hospital, and certainly there is no suggestion in Dr. Morgan's testimony that the exercise of ordinary care in this case required the taking of a blood count before March 4, in view of the facts disclosed by the examination.

It is also argued that defendant's own testimony showed that the customary practice in the community required the taking of X-rays and that, therefore, defendant's failure to take X-rays would support a finding of negligence. The argument is based upon defendant's statement that Dr. Morgan made a "regular routine examination" and ordered X-rays to be taken. Even if we assume that in referring to the "regular routine examination" defendant was testifying to the methods ordinarily employed in the exercise of due care by medical practitioners in the community, the record does not show that the taking of X-rays was a part of the examination referred to. After testifying that Dr. Morgan made a "regular routine examination," defendant was asked to tell what Dr. Morgan did. He explained that Dr. Morgan examined the patient's eyes, throat, chest, that he palpated and percussed his abdomen, and that he performed a rectal examination. In response to the further question "What other examination did Dr. Morgan make. at that time . . . ?" defendant stated "He didn't make any more examination." The taking of X-rays was considered and identified by defendant as a separate or distinct examination. Moreover, Dr. Morgan made his examination after defendant had determined that an operation for appendicitis was necessary and had so informed plaintiff. There is no evidence that the symptoms which might have required the taking of X-rays as an aid to careful diagnosis on March 9, when Dr. Morgan was called in on the case, existed at an earlier date. On the contrary, the testimony showed that the patient's condition had taken a turn for the worse immediately prior to the time defendant concluded that an operation was necessary.

We are of the opinion that medical learning was necessary to guide the mind of the unskilled in determining whether failure positively to diagnose the illness as appendicitis at an earlier date resulted from negligence. The proper methods to be employed in the diagnosis of an internal abdominal ailment, as well as the merits of such a diagnosis, are peculiarly within the knowledge or province of experts.

It is plaintiff's theory, however, that laymen are so

familiar with the use of X-rays that the jurors would have been justified in drawing upon their common knowledge as a basis for a finding that defendant was negligent in failing to take X-rays. While it has been intimated in some cases that the use of X-rays as an aid to careful diagnosis of traumatic injuries is a matter of common knowledge (see *McBride* v. *Saylin,* 6 Cal.2d 134, 138 [56 P.2d 941]; *Rankin* v. *Mills,* 207 Cal. 438, 441 [278 P. 1044]; *Reynolds* v. *Struble,* 128 Cal.App. 716, 725 [18 P.2d 690]), we cannot say that the use of X-rays in the diagnosis of an internal abdominal ailment such as revealed by the facts in this case is so well established that the jury could have determined, of its own knowledge, that failure to take X-rays constituted negligence. As stated in *McCollum* v. *Barr,* 38 Cal.App. 411, 427 [176 P. 463], which is relied upon by plaintiff, ''A broken or dislocated member of the body . . . presents an entirely different problem from internal disorders whose manifestions are obscure and often misleading.''

It was not only necessary for plaintiff to prove a mistake in diagnosis, but also that the mistake was due to failure to exercise ordinary care in making the diagnosis (*Patterson* v. *Marcus,* 203 Cal. 550, 552 [265 P. 222]), and mere proof that the treatment was unsuccessful is not sufficient to establish negligence. (*Nicholas* v. *Jacobson,* 113 Cal. App. 382, 386 [298 P. 505].) We are satisfied there is no evidence in the record before us showing that defendant was negligent in the diagnosis or treatment of his patient's ailment.

It follows that on a consideration of the evidence introduced the trial court could have properly granted a nonsuit. The judgment must, nevertheless, be reversed because the court committed prejudicial error in limiting the scope of the examination of defendant who was called as an adverse witness pursuant to the provisions of section 2055 of the Code of Civil Procedure. During the course of his examination defendant was asked the following questions: (1) ''From what you saw there, Doctor, you would say that that condition [ruptured appendix] had persisted for at least three days?'' (2) ''Doctor, the normal leucocyte count in a boy 12 years of age is between eight and ten thousand?'' (3) ''Doctor, do you know what the normal leucocyte count in the blood stream of a boy about 12 years of age is?'' Objec-

tions were sustained to these questions on the ground they called for expert testimony and that an adverse party called as a witness under section 2055 cannot be examined as an expert.

Statutes such as section 2055 were enacted to enable a party to call his adversary and elicit his testimony without making him his own witness. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540, 556 [299 P. 529]; *Waller* v. *Sloan*, 225 Mich. 600 [196 N.W. 347, 348]; *Langford* v. *Issenhuth*, 28 S.D. 451 [134 N.W. 889, 892].) They are remedial in character and should be liberally construed in order to accomplish their purpose. (*Smellie* v. *Southern Pacific Co.*, *supra*.) Any relevant matter in issue in a case is within the scope of the examination of witnesses called pursuant to the provisions of such statutes. (*Langford* v. *Issenhuth*, *supra*; *Waller* v. *Sloan*, *supra*; *Pfefferkorn* v. *Seefield*, 66 Minn. 223 [68 N.W. 1072, 1073]; *cf. Cioli* v. *Kenourgios*, 59 Cal.App. 690, 697 [211 P. 838]; *Good* v. *Brown*, 51 Cal.App. 199, 201 [196 P. 299].) The opinion in *Langford* v. *Issenhuth*, *supra*, states: "It is said that the widest and freest scope is to be given the examination. . . . The whole case may be fully and minutely investigated. . . . It appears to us the main purpose of the statute is to permit an adverse party to be called as a witness to prove or to be interrogated concerning facts material to the case of the party calling him, and that such a witness may be called to prove a single material fact, or a number of material facts, even the whole case. The facts as to which the party calling such witness may desire to examine him are wholly within his discretion." It is well settled that a plaintiff in a malpractice action can establish his case by the testimony of the defendant therein. (*Scott* v. *Sciaroni*, 66 Cal.App. 577, 582 [226 P. 827]; *cf. Dempsey* v. *Star House Movers, Inc.*, 2 Cal.App.2d 720 [38 P.2d 825]; *Bolles* v. *Kinton*, 83 Colo. 147, 151 [263 P. 26, 56 A.L.R. 814]; *Jacobs* v. *Grigsby*, 187 Wis. 660, 666 [205 N.W. 394].) It is equally well settled that expert testimony is ordinarily required to prove the material or relevant issues in an action for malpractice. Neither the letter nor the spirit of the statute suggests any reason why the defendant in such an action should not be examined with regard to the standard of skill and care ordinarily exercised by doctors in the community under like circumstances and with respect to whether

his conduct conformed thereto. We are of the opinion that such examination should be permitted under section 2055 even though it calls for expert testimony. (*Anderson* v. *Stump,* 42 Cal.App.2d 761, 765 [109 P.2d 1027]; *cf. Harnden* v. *Mischel,* 63 N.D. 122 [246 N.W. 646, 648]; *Sax Motor Co.* v. *Belfield Farmer's Union Elevator Co.,* 62 N.D. 727 [245 N.W. 488, 489].) There are cases which may support a contrary conclusion (*Forthofer* v. *Arnold,* 60 Ohio App. 436 [21 N.E.2d 869, 872]; *Wiley* v. *Wharton,* 68 Ohio App. 345 [41 N.E.2d 255,258]; *Osborn* v. *Carey,* 24 Idaho 158 [132 P. 967, 970]), but in our opinion a rule excluding such testimony is at variance with the theory underlying the statute.

Defendant contends that plaintiff cannot complain of the trial court's rulings on evidence since she did not make an offer of proof. Where, however, an entire class of evidence has been declared inadmissible or the trial court has clearly intimated that it will receive no evidence of a particular type or class, or upon a particular issue, an offer of proof is not a prerequisite to arguing on appeal the prejudicial nature of the exclusion of such evidence. (*Tomaier* v. *Tomaier,* 23 Cal.2d 754 [146 P.2d 905]; *Caminetti* v. *Pacific Mut. Life Ins. Co.,* 23 Cal.2d 94, 100 [142 P.2d 741]; *People* v. *Duane,* 21 Cal.2d 71, 81 [130 P.2d 123]; *Phillips* v. *Powell,* 210 Cal. 39, 42 [290 P. 441]; *Grieve* v. *Howard,* 54 Utah 225 [180 P. 423, 425]; *cf. Chamberlain Co.* v. *Allis-Chalmers Mfg. Co.,* 51 Cal.App.2d 520, 525 [125 P.2d 113]; *Ballsun* v. *Star Petroleum Co.,* 105 Cal.App. 679, 689 [288 P. 437]; *San Joaquin L. & P. Co.* v. *Barlow,* 43 Cal.App. 241, 243 [184 P. 899].) In the present case the trial court stated that defendant could not be interrogated as an expert and thereby foreclosed examination on issues which could be proved solely by expert testimony. Furthermore, the examination of a party under section 2055 is often exploratory and it would be unreasonable to require an offer of proof under such circumstances. (*In re Olson's Estate,* 54 S.D. 184 [223 N.W. 41, 43]; *cf. Alford* v. *United States,* 282 U.S. 687, 692 [51 S.Ct. 218, 75 L.Ed. 624].) Insofar as *Thompson* v. *Buffums', Inc.,* 17 Cal.App.2d 401, 405 [62 P.2d 171], and *In re Claire,* 9 Cal. App.2d 749, 753 [50 P.2d 1070], suggest a different rule, they are hereby disapproved.

Plaintiff failed, although it was incumbent upon her, to establish by expert testimony the standard of skill and

care ordinarily exercised by practitioners in the community under like circumstances and that defendant's conduct in this instance was not consistent therewith. While it may be true that favorable answers to the questions propounded would not have supplied the deficiency in proof in this case, plaintiff was precluded, by virtue of the trial court's ruling, from continuing with the examination of the witness and developing further the line of inquiry which might have elicited the essential expert testimony. The record shows that plaintiff's counsel asked and then withdrew certain questions in order to comply with the court's ruling. The questions to which objections were sustained were appropriate preliminaries to a more complete examination of the witness, and prejudice ensued from the cutting off *in limine* of all inquiry on a subject with respect to which plaintiff was entitled to examine defendant. (*Cf. Alford* v. *United States,* 282 U.S. 687, 694 [51 S.Ct. 218, 75 L.Ed. 624]; *People* v. *Duane,* 21 Cal.2d 71, 81 [130 P.2d 123]; *San Joaquin L. & P. Co.* v. *Barlow,* 43 Cal.App. 241, 243 [184 P. 899].)

Defendant also contends the record does not show that plaintiff (who at the time the action was commenced was living separate and apart from the boy's father) had custody of the boy and that, therefore, she cannot maintain the action or prosecute this appeal. (Code Civ. Proc., § 376.) The motion for nonsuit was based upon the ground, among others, that the boy's father alone had the right to maintain the action. Before the court ruled on the motion, however, defendant withdrew the objection based on that ground. The objection was not again made in the trial court and plaintiff contends that it is not, therefore, available on this appeal.

There is a conflict of authority in this state regarding the practice to be followed by appellate courts in reviewing an order granting a nonsuit. It has been held in a long line of cases that on appeal from an order granting a nonsuit, the court will ordinarily consider only the grounds specified in the motion at the trial. (*Moore* v. *Moffatt,* 188 Cal. 1, 5 [204 P. 220]; *Glidden* v. *Diamond 66 Cattle etc. Co.,* 178 Cal. 562, 565 [174 P. 667]; *Brown* v. *Sterling Furniture Co.,* 175 Cal. 563, 564 [166 P. 322]; *Warner* v. *Warner,* 144 Cal. 615, 619 [78 P. 24]; *Durfee* v. *Seale,* 139 Cal. 603, 604, 607 [73 P. 435]; *Fontana* v. *Pacific Can Co.,* 129 Cal. 51, 55 [61 P. 580]; *Harper* v. *Gordon,* 128 Cal. 489, 491 [61 P. 84]; *Bronzan* v. *Drobaz,* 93 Cal. 647, 650 [29 P. 254];

*Flynn* v. *Dougherty,* 91 Cal. 669, 671 [27 P. 1080, 14 L.R.A. 230] ; *Palmer & Rey* v. *Marysville Dem. Publishing Co.,* 90 Cal. 168, 169 [27 P. 21] ; *Daley* v. *Russ,* 86 Cal. 114, 117 [24 P. 867] ; *Shain* v. *Forbes,* 82 Cal. 577, 582 [23 P. 198] ; *Raimond* v. *Eldridge,* 43 Cal. 506, 508; *Sanchez* v. *Neary,* 41 Cal. 485, 487; *Rovegno* v. *San Jose K. of C. Hall Assn.,* 108 Cal.App. 591, 598 [291 P. 848] ; *Ross* v. *Tabor,* 53 Cal.App. 605, 616 [200 P. 971] ; *Potts* v. *Mehrmann,* 50 Cal.App. 622, 628 [195 P. 941] ; *Breidenbach* v. *McCormick Co.,* 20 Cal.App. 184, 193 [128 P. 423] ; *Christenson Lumber Co.* v. *Buckley,* 17 Cal.App. 37, 43 [118 P. 466] ; *Stanton* v. *Carnahan,* 15 Cal. App. 527, 530 [115 P. 339] ; *De Leonis* v. *Hammel,* 1 Cal. App. 390, 396 [82 P. 349] ; see *Moore* v. *Steen,* 102 Cal.App. 723, 725 [283 P. 833] ; *Dawson* v. *Tulare Union High School,* 98 Cal.App. 138, 140 [276 P. 424] ; *Scott* v. *Sciaroni,* 66 Cal. App. 577, 581 [226 P. 827] ; *cf. Coulter* v. *Hensen,* 204 Cal. 337, 340 [268 P. 332].) On the other hand, almost an equal number of cases support the rule that a judgment of nonsuit will be upheld on appeal if it can be justified on any ground, whether made a ground of the motion or not. (*Anchester* v. *Keck,* 214 Cal. 207, 213 [4 P.2d 934] ; *Wilson* v. *Wilson,* 55 Cal.App.2d 421, 432 [130 P.2d 782] ; *Wood* v. *Powers,* 50 Cal.App.2d 581, 584 [122 P.2d 564] ; *Balian* v. *Balian's Market,* 48 Cal.App.2d 150, 154 [119 P.2d 426] ; *Estate of Velladao,* 31 Cal.App.2d 355, 362 [88 P.2d 187] ; *Hanrahan-Wilcox Corp.* v. *Jenison M. Co.,* 23 Cal.App.2d 642, 644 [73 P.2d 1241] ; *Elliott* v. *Haskins,* 20 Cal.App.2d 591, 595 [67 P.2d 698] ; *Jackson* v. *Underwriters' Report Inc.,* 21 Cal. App.2d 591, 594 [69 P.2d 878] ; see *Gilliam* v. *Brown,* 126 Cal. 160, 162 [58 P. 466] ; *Snell* v. *Payne,* 115 Cal. 218, 222 [46 P. 1069] ; *Miller* v. *Wade,* 87 Cal. 410, 412 [25 P. 487] ; *Inderbitzen* v. *Lane Hospital,* 124 Cal.App. 462, 469 [12 P.2d 744, 13 P.2d 905] [opinion of Supreme Court in denying hearing] ; *Estate of Rabinowitz,* 58 Cal.App.2d 106, 109 [135 P.2d 579] ; *Knecht* v. *Lombardo,* 33 Cal.App.2d 447, 450 [91 P.2d 917] ; *D'Alessandro* v. *Pickford,* 22 Cal.App.2d 239, 241 [70 P.2d 646] ; *Ezmirlian* v. *Otto,* 139 Cal.App. 486, 488 [34 P.2d 774] ; *Bailey* v. *Brown,* 4 Cal.App. 515, 516 [88 P. 518].)

In resolving this conflict we should bear in mind that ordinarily the reviewing court will uphold the judgment or order of the trial court if it is right, although the reasons

relied upon or assigned by the court are wrong. The doctrine is sound and salutary in most situations since it prevents a reversal on technical grounds where the cause was correctly decided on the merits. But this is not true as applied to non-suits, for such a doctrine would frequently undermine the requirement that a party specify the ground upon which his motion for nonsuit is based in order to afford the opposing party an opportunity to remedy defects in proof. It seems obvious that the doctrine intended solely to uphold judgments correct on the merits should not be permitted to produce the opposite result. The correct rule is that grounds not specified in a motion for nonsuit will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion. This rule is complementary to the requirement that a party specify the grounds upon which his motion for nonsuit is based. The decisions and dicta in cases which support a contrary rule are hereby overruled and disapproved.

The defendant having withdrawn as a ground for nonsuit the contention that plaintiff failed to establish her right to maintain the action, which claimed defect might have been corrected by further proof, the ground is not available to defendant here.

The judgment is reversed.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied May 4, 1944.