[Civ. No. 9868.   Third Dist.   May 5, 1961.]

HANSEN PACIFIC CORPORATION (a Corporation), Appellant, v. BUCK MOUNTAIN LOGGING COMPANY (a Corporation), Respondent.

Falk & Falk, Robert C. Dunn, Berol & Silver and Mautz, Souther, Spaulding, Denecke & Kinsey for Appellant.

A. D. McNeil, Tom B. Markley, Robert D. Wenzel, Mathews & Traverse and Herbert Chamberlin for Respondent.

PEEK, J.—Plaintiff's complaint set forth two causes of action, (1) specific performance and (2) breach of contract. Defendant's demurrer to the first cause was sustained and thereafter, upon motion of plaintiff, this cause was dismissed without prejudice. The demurrer to the second cause was overruled and the case proceeded to trial on the second cause, breach of contract. At the conclusion of plaintiff's case, defendant's motion for a nonsuit was granted and this appeal followed.

Plaintiff, a manufacturer of timber, desired to purchase certain timber and timberlands from the defendants. The negotiations of the parties culminated in a meeting between the presidents of both corporations in the office of defendant's

attorney. As a result, defendant's counsel drafted the following document, which was signed by both parties: .

> "Fortuna, California
> July 2̶1̶, 1955
> 27
> HRH Jr.

"Hansen Pacific Corporation
P. O. Box 845
Fortuna, California

Attention: H. R. Hansen, Jr.
President

"Gentlemen:

"We are willing to sell to you our timber and timberlands in the Briceland area which we acquired from Walter G. Brix, Inc., Marie Brix, *et al.*, the purchase price to be determined by a cruise being presently conducted by Herbert Brede, Jr., multiplied by $12 per M; any timber removed by us which was included in said cruise to be deducted from the total.

"Terms of payment as follows:

"(a) Cash down payment of $400,000.00, or 29% of the total purchase price, whichever amount is the smaller;

"(b) Remaining balance to be paid as timber is removed, computed at $15 per M; payments to be made twice monthly on the 10th and 25th of each month;

"(c) Minimum annual payments, commencing with year 1956, to be $200,000.00 plus interest; deferred balances shall bear interest at the rate of 3% per annum;

"(d) Any logging performed in 1955 shall not be paid for until January 2, 1956, and this amount shall not be credited on the 1956 annual minimum.

"You agree to pay us $10,000.00 upon the execution of this Memorandum as earnest money which sum we shall retain if you do not complete this transaction for any reason, excepting only your failure to reach a suitable agreement with Harold Trimble for the acquisition of the sawmill.

"All logs in the woods shall be scaled as of the date possession changes, and you agree to reimburse us for our expense of felling and bucking said logs at $3.50 per M, said sum to be paid in full on January 2, 1956.

"We agree to sell you after September 30, 1955, and you

agree to buy, the Grace Tucker tract which we have acquired in addition to the Brix holdings. The purchase price shall be computed in the same fashion as the balance of said purchase and the amount thereof added to the total purchase price on this transaction.

"We agree to give you the first refusal to buy any other timber which we own in the Briceland area in the event we should offer the same for sale at any time within one (1) year after the date hereof.

"It is understood that we shall have a period of six (6) months to clear the titles to the properties, it being further understood that we shall not be required to remove minor liens or clouds thereon which do not constitute any interference with your enjoyment of the possession of the properties.

"Unless the entire transaction is consummated within (thirty (30) days from the date hereof,) this offer is void.

"This date O.K. July 27-1955 by Axel Erickson F.J.E.

> "Very truly yours
> BUCK MOUNTAIN LOGGING Co.
> By /s/ AXEL ERICKSON
> Its President

"ACCEPTED:

HANSEN PACIFIC CORPORATION
By /s/ H. R. HANSEN, JR.
Its President"

Thereafter, defendant's counsel delivered to plaintiff's counsel a copy of said agreement and certain title reports, which contained descriptions of the lands and timber described in plaintiff's complaint.

On August 19, 1955, the following letter was received by defendant:

> "P. O. Box 845
> Fortuna, California
> August 19, 1955

"Buck Mountain Logging Co.
  P. O. Box 285
  Fortuna, California

"Attention: Mr. Axel Erickson, President

"Gentlemen:

"Hansen Pacific Corporation herewith exercises its option which you have granted it in agreement between us dated

July 27, 1955, a copy of which is attached hereto. We are ready, able and willing to pay you the cash down payment provided for in subparagraph (a) thereof when you have furnished us with (and we have had an opportunity to examine a report of the cruise referred to in the first paragraph of said option agreement.)

> "Yours very truly,
>
> HANSEN PACIFIC CORPORATION
>
> By /s/ H. R. HANSEN, JR.
>
> President"

The record discloses no further communication between the parties until about September 29, 1955, when defendants' counsel mailed to plaintiffs' counsel the following letter:

"Gentlemen:

"You recently transmitted to this office for the attention of Buck Mountain Logging Company a purported exercise of option or notice of acceptance of offer on behalf of Hansen Pacific Corporation. Please be advised that Buck Mountain Logging Company has instructed me to advise you that Buck Mountain Logging Company is unwilling to sell the properties therein referred to to Hansen Pacific Corporation because the said Hansen Pacific Corporation has not observed or complied with the terms and conditions of the memorandum executed by the parties. Buck Mountain Logging Company has returned to your client the uncashed check which was left with Buck Mountain Logging Company by Hansen Pacific Corporation."

The record further discloses that the $10,000 "earnest money" payment called for in the first document between the parties was paid by plaintiff to defendant and was subsequently returned. In addition, the record shows that plaintiff's president requested a copy of the Brede cruise, also noted in the first agreement, on numerous occasions, but was never given a copy as requested.

Defendant's motion for nonsuit was made on several grounds and although not as precisely stated as might be desired, it appears that the motion included the following: (1) that plaintiff's acceptance was conditional and hence, no contract was created; (2) that even if a contract was created, plaintiff failed to prove that it met the condition precedent of making the first payment (i.e., "$400,000.00 or 29% of the

total purchase price, whichever amount is the smaller'') within the time specified; (3) that the contract was unenforceable because there was no mutuality of obligation; (4) that the contract was unenforceable under the statute of frauds in that the plaintiff failed to prove that the description in the contract was certain or capable of being made certain; and (5) that the contract could not be enforced because it was couched in terms so vague and uncertain as to be impossible of understanding. It should be noted that from the comment of the trial court, as disclosed by the record, it appears that the first point made by the defendant in its motion was the sole basis upon which the trial court rested its ruling and subsequent judgment.

This being an appeal from a judgment of nonsuit, respondent is met at the outset with the well-established rule that this court must view all of the evidence in the light most favorable to the plaintiff, disregarding all inconsistencies and drawing only those inferences from the evidence which can reasonably be drawn, and which likewise are favorable to the plaintiff (*Sunset Milling & Grain Co.* v. *Anderson,* 39 Cal.2d 773 [249 P.2d 24]) ; and the further rule, also enunciated in the cited case, that on appeal from a judgment of nonsuit, an appellate court is not bound by the construction given a written instrument by the trial court. However, since it also appears that any of the theories advanced by respondent in its motion for nonsuit, if valid, would be sufficient to sustain the judgment, it becomes incumbent upon us to consider each theory in determining the propriety of that judgment. (*Lawless* v. *Calaway,* 24 Cal.2d 81 [147 P.2d 604].)

As noted, the trial court granted defendant's motion on the theory that plaintiff did not unqualifiedly accept the defendant's offer. It seems clear, however, that until plaintiff at least had an opportunity to examine the Brede cruise, there was no way for it to determine whether ''$400,000.00, or 29% of the total purchase price'' was the smaller, since ''. . . the purchase price . . . [was] to be determined by a cruise being . . . conducted by Herbert Brede, Jr., multiplied by $12 per M.'' Thus, it cannot be said that when plaintiff stated in part, ''We are ready, . . . to pay you the cash down payment . . . when you have furnished us with (and we have had an opportunity to examine a report of the cruise referred to in the first paragraph of said option agreement)'' that such acceptance was conditional. While it is true

that the so-called option agreement contains no specific language requiring defendant to furnish plaintiff with a copy of the cruise, the record does show that this item, as well as all other matters contained in the offer, was discussed by the parties; and furthermore, the cruise had been instituted by defendant prior to the execution of that document. It would therefore appear that, when the acts and conduct of the parties are viewed in light of the rules expressed in the cases previously cited, the defendant had the responsibility of providing plaintiff with a copy of the cruise and that plaintiff's acceptance imposed no new condition, but stated what was impliedly agreed upon by the parties.

Respondent also asserts that there was no contract because plaintiff's promise was illusory, since it did not create any duty on plaintiff's part. Respondent relies on that portion of the agreement calling for the return of the $10,000 deposit if plaintiff were unable to "reach a suitable agreement with Harold Trimble for the acquisition of the sawmill." This provision does not make the promise illusory. As stated in 1 Corbin on Contracts, section 149, at pages 483-484: "It has been thought, also, that promissory words are illusory if they are in form a promise that is conditional on some fact or event that is wholly under the promisor's control and his bringing it about is left wholly to his own will and discretion. This is not true, however, if the words used do not leave an unlimited option to the one using them. It is true only if the words used do not in fact purport to limit future action in any way." The illustration used by Corbin is appropriate to the instant case. He states: "Thus, if A promises to charter a specified ship to B on certain terms if A shall thereafter buy the ship, these words leave A clearly privileged not to buy the ship and in such event also privileged not to charter it to B; but it is equally clear that the words do not leave A privileged to buy the ship and then not charter it to B. A contract on such terms is valid and enforceable."

The defendant's next argument in support of the action of the trial court is that the description of the property contained in the offer ("our timber and timberlands in the Briceland area which we acquired from Walter G. Brix, Inc., Marie Brix, et al.") is so vague and uncertain as to violate the statute of frauds. (Civ. Code, § 1624, subd. 4.) It is a fundamental rule that the statute is designed to prevent fraud and cannot be invoked to perpetrate it. (*Bouchard* v.

*Cole,* 143 Cal.App.2d 93 [299 P.2d 697].) Further, according to 2 Corbin on Contracts, section 505, page 718, the statute should be narrowly construed in this area. ▮ In the case at bar it seems clear that the parties understood what land was described in the defendant's offer, as is illustrated by the title reports which were given to plaintiff following the execution of the first agreement. To now hold that the description is inadequate would in fact violate the basic concept set out above. We are of the opinion that the aforementioned description, although inadequate in itself, does provide a "key" so that the land can be properly identified. (*Beverage* v. *Canton Placer Mining Co.,* 43 Cal.2d 769 [278 P.2d 694].)

▮ Lastly, we cannot say as a matter of law that the evidence offered by the plaintiff was insufficient to delineate the actual land intended to be conveyed by the parties. Therefore, the defendant's contention that this contract violates the statute of frauds is without merit. It follows that if the description contained in the offer is capable of being made certain, and "That is certain which can be made certain" (Civ. Code, § 3538), then the nonsuit cannot be upheld on the theory that the contract was so vague and uncertain that it would be impossible to enforce.

For the reasons above stated the judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied June 2, 1961, and respondent's petition for a hearing by the Supreme Court was denied June 28, 1961.