[L. A. No. 10691. In Bank.—October 30, 1931.]

HENRY ANCHESTER, Appellant, v. W. M. KECK, Respondent.

JOSEPH SCOTT et al., as Receivers, etc., Interveners and Appellants, v. HENRY ANCHESTER et al., Respondents.

A. G. Ritter, Anderson & Anderson, Frank P. Doherty, M. Eleanor Mack and William R. Gallagher for Appellants.

Chandler, Wright & Ward, Finlayson, Bennett & Morrow and H. T. Morrow for Respondents.

SEAWELL, J.—The petition for a hearing was granted in this cause after decision by the District Court of Appeal, First Appellate District, Division Two, Sturtevant, J., writing the opinion of said court, for the purpose of giving this court an opportunity of making a closer examination of a voluminous record than it was possible to do under our appellate system upon petition for hearing. Upon a further examination of the record and the merits of the appeal, which was taken from a judgment entered after an order granting respondents' motion for a nonsuit, we

are of the opinion that the questions presented upon appeal were correctly disposed of by the opinion of said District Court of Appeal, which is herewith adopted as the decision of this court, together with such supplemental observations as we have appended thereto:

"The plaintiff commenced an action against the defendant to recover a deposit made under a contract of option. The defendant answered. The receivers of the California-Eastern Oil Company and Julian Petroleum Corporation filed a complaint in intervention. The defendant answered the complaint in intervention. On the issues so framed a trial was had before the court sitting with a jury. At the end of the plaintiff's case the trial court granted defendant's motions for nonsuits. The plaintiff and the interveners have appealed, have brought up typewritten transcripts and have filed one set of briefs. Hereinafter we will refer to both parties as the plaintiff.

"On the 2d of October, 1926, the plaintiff and defendant executed a contract under the terms of which the plaintiff was given an option to buy a block of stock in the Superior Oil Company at one dollar per share. He paid down $100,000, and under the terms of that agreement it was further provided that: 'Henry Anchester shall have to and including the 1st day of November, 1926, in which to elect whether or not he will exercise this option. If Henry Anchester elects to exercise this option, he shall, on or before said date, deposit with the Farmers and Merchants National Bank of Los Angeles, the sum of two million dollars ($2,000,000) in cash with instructions to said bank to pay such cash to W. M. Keck or order, and will at the same time deliver to W. M. Keck a written notice of the exercise of this option, whereupon the said Henry Anchester shall be obligated to purchase, and W. M. Keck will be obliged to sell, . . . and in the event of the failure of Henry Anchester to make any of the payments hereinabove provided for at the times herein stated, all previous payments made by him shall be forfeited as agreed and liquidated damages for his breach of the agreement, and this agreement shall be terminated and he shall have no right, title, or interest of any kind or character in and to any of the stock of the Superior Oil Company so de-

posited or any claim or right of any kind against W. M. Keck or any other person. . . . Time is hereby declared to be of the essence of this agreement.' On October 26, 1926, the plaintiff and defendant commenced a discussion of the terms of a new contract of option not the modification of the existing option. Some of the terms of that proposed contract were to the effect that the plaintiff should have an option extending to the 27th day of December, 1926, at the same price per share, but the plaintiff was to pay $250,000 on the execution of the new option and there was to be released to the defendant certain equipment then owned by the Superior Oil Company. Said negotiations continued from the 26th day of October until late in the afternoon on November 3, 1926. At that time the negotiations were broken off. No paper or papers were signed evidencing the new agreement, and we do not understand either party to contend that the inchoate transactions ever culminated in a contract.

"The plaintiff did not plead the facts, but he pleaded two counts. He set up a common count as for money loaned and he set up a common count as for moneys had and received. The complaint in intervention set up one count only and that was a common count as for moneys had and received. In the defendant's answers he denied the material allegations contained in the plaintiff's complaint and in the complaint in intervention. Each party made an opening statement. Many witnesses were called and examined. No one of them testified to any fact or facts showing rescission, abandonment or estoppel excepting as the negotiations for a new option may be evidence thereof.

"The plaintiff contends that the defendant, by entering into negotiations with plaintiff looking toward the execution of a new option, estopped himself from relying on the contract of October 2, 1926; that he misled the plaintiff to his injury; and that the defendant therefore breached and abandoned said contract. He does not claim that the defendant, or any one of his agents, made any declaration or promise which lulled him to sleep. He relies solely on conduct. But, in that connection, the plaintiff testified that during those negotiations he stated 'every fifteen minutes' that he was not to be understood as waiving any rights under the contract of October 2, 1926. The

defendant stated his position in writing. He caused to be delivered to the plaintiff on October 30, 1926, a letter which states: 'We understand that your option agreement with Mr. Keck dated Oct. 2, 1926, is still in full force and effect and that this other proposed agreement is simply tentative and not binding on either party and either party has the right to refuse to enter into any additional agreements other than the agreement of Oct. 2, 1926.' Giving the plaintiff the benefit of every right to which he was entitled on the presentation of a motion for a nonsuit (*Hoff* v. *Los Angeles Pac. Co.*, 158 Cal. 596 [112 Pac. 53]) it is patent that the plaintiff, under such a set of facts, may not claim that he was misled. This conclusion is re-enforced by a consideration of the terms of the proposed agreement dated November 3, 1926. Had it been executed, the plaintiff would not have been entitled to the repayment of his $100,000 nor for a credit as for a payment on account. It does not purport to be a modification of the option dated October 2, 1926. It does not mention that option nor the said $100,000. It is a wholly new and independent instrument.

"Examined as an action in equity, the result is the same. If it be claimed that the plaintiff was misled, still it does not follow that he was wholly excused from performance. But, by proper pleadings and proof he was entitled to apply to a court of equity to be given relief. (*Glock* v. *Howard*, 123 Cal. 1, 9 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713].) But he who seeks equity should do equity. If, as claimed, the plaintiff was ready, anxious, and willing, on November 1, 1926, to elect to take up the option dated October 2, 1926, except for the wrong impression he formed as to the defendant's intentions as to a sale, then his remedy was to make a belated tender, and ask a court of equity to approve it and relieve him from his forfeiture. However, the plaintiff has never made a tender nor an offer to perform and does not now do so. November 3, 1926, it became clear that the defendant was not willing to give another option under the terms of the inchoate agreement of that date. The plaintiff's rights, if any, depended therefore on the contract of October 2, 1926, and the duty rested on him of serving a written notice of his election

and of tendering $2,000,000 as provided in that instrument. But this he has wholly failed to do.

"The facts which we have already set forth show that the defendant at no time abandoned his contract dated October 2, 1926, but at all times relied thereon.

"There is no evidence that at any time the defendant was ever in default nor that at any time he departed from his contract nor that he rescinded it in any respect.

"The plaintiff cites and relies on *Hulen* v. *Stuart,* 191 Cal. 562 [217 Pac. 750]. That case is not in point because it involved very different facts. In that case the defendant Stuart made certain positive statements that he would later perform the existing contract. In the instant case a proposed agreement was merely being discussed and the defendant made no promises as to the existing contract.

"The plaintiff complains because the defendant did not in his motions for nonsuits state specifically the defects in the proof that had been made by the plaintiff. The defendant replies that when a motion for a nonsuit has been granted a court of review will uphold the judgment of nonsuit if it can be upheld under any possible theory, whether such theory was or was not specified in the motion. (*Miller* v. *Wade,* 87 Cal. 410, 412 [25 Pac. 487].) Moreover, the plaintiff pleaded his case by adopting (1) a common count for money loaned and (2) a common count for money had and received. He did not plead the facts. In stating his motion for a nonsuit the defendant was fully as exact and as specific as was possible under the allegations of the complaint. In his brief the plaintiff states for the first time the circumstances under which he claims the courts should ignore the terms contained in his written contract. Until that brief was filed the defendant could only guess the plaintiff's theory. The plaintiff heard the motion when it was made, but he did not then complain because it was too general and not specific, and thereafter the motions were argued at length in the trial court. We think the point is not well taken."

Supplementary to that portion of the opinion which treats of the point made by appellants to the effect that the grounds stated in the motion for nonsuit were not sufficiently specific to justify the granting of the motion, it

may be observed that the cases cited by appellants, such as *Millar* v. *Millar,* 175 Cal. 799 [Ann. Cas. 1918E, 184, L. R. A. 1918B, 415, 167 Pac. 394], are not in point. The only grounds stated in those cases were phrased in the most general terms, as, for example, ''there is not evidence before the court justifying it in granting the relief prayed for'', or, ''that plaintiff had failed to prove a sufficient case'', etc. In those cases the motion for a nonsuit was denied for the reason that there was no pretense of pointing out the grounds of the motion. In the instant case the grounds are as specifically set out as it was possible to point out the infirmities of plaintiff's case, and that they were sufficient to inform the court of the specific grounds of defendant's motion is made manifest by the court's affirmative action in granting the motion. ▪ The reason of the rule of disclosure is for the court's protection. In those several cases cited by appellants in which no attempt was made to disclose to the court the specific grounds of the motion to dismiss the action, the motion was *denied* and upon appeal the order of the trial court was affirmed, but here, the court having been fully informed in the premises, the motion was *granted*. But aside from the question of sufficiency of specification, the rule invoked by appellants has application only to cases in which the motion for nonsuit is *denied,* and not to an order *granting* it. In the latter instances the motion will be sustained if it might have been properly granted upon any ground, whether made a ground of the motion or not. (*Miller* v. *Wade,* 87 Cal. 410 [25 Pac. 487]; *Davey* v. *Southern Pac. Co.,* 116 Cal. 325 [48 Pac. 117]; *Bailey* v. *Brown,* 4 Cal. App. 515 [88 Pac. 518].)

We have also given consideration to appellants' claim that the case made by them was sufficient to pass a motion for nonsuit and should have gone to the jury for decision on the theory that the District Court of Appeal failed to disregard conflicts in the evidence and also failed to apply the rule that the evidence offered by plaintiff must be examined in the light of the evidence which is most favorable to plaintiff's cause.

Appellants, in support of their main contention, insist that the conduct and statements made by respondent misled appellant Anchester and those associated with him in the

management of the Julian Petroleum Corporation to the prejudice of said Anchester or his principal. We are unable to understand how this could be so in the face of the fact that both parties to the option agreement dated October 2, 1926, in which time is made the essence by the agreement, were dealing with each other at arm's length, and in view of the letter which respondent caused to be written and delivered to Anchester on October 30, 1926, in which Anchester was specifically forewarned that the option agreement dated October 2, 1926, "is still in full force and effect and that this other proposed agreement is simply tentative and not binding on either party and either party has the right to refuse to enter into any additional agreements other than the agreement of October 2, 1926". In addition to the above notice served on Mr. Anchester two days before his option expired under the first agreement, Anchester testified at the trial that he repeatedly stated during negotiations looking to the making of the other agreement that he was not to be understood as waiving any rights under the contract of October 2, 1926. Thus the understanding of the parties as to the binding effect of the option agreement dated October 2, 1926, was clearly and expressly stated by both parties, to the end that subsequent negotiations as to the making of a different option agreement might not invalidate or impair it in any respect.

It is a circumstance of some significance that Anchester, notwithstanding he seems to have experienced some difficulty in raising the first payment under the proposed second option, did not suggest that the $100,000 deposit made in the first transaction should be treated as a credit *pro tanto* in the second transaction. The second proposed agreement nowhere refers to it as moneys for which Anchester was entitled to a credit or claimed a credit.

The rules applicable to motions for nonsuits do not require courts to put themselves in incongruous positions in order to hold a case in court. Courts will not give a strained or unnatural construction to language or conduct, or distort the orderly laws of sequences or the logic of a given situation to force an unnatural result. Looking at the case as presented, and giving the effect to the evidence which in reason it should receive, we are in accord with the conclusions

reached by the District Court of Appeal. The evidence as a matter of law is insufficient to support a judgment for appellants.

The order and judgment are affirmed.

Richards, J., Shenk, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.