[Civ. No. 12701. Second Dist., Div. Two. Nov. 28, 1941.]

HABIB BALIAN et al., Appellants, v. BALIAN'S MARKET (a Corporation) et al., Respondents.

Frank J. McCarthy, Elizabeth R. Hensel and Lee D. Mathews for Appellants.

Elbert E. Hensley for Respondents.

HANSON, J. *pro tem.*—This is an action by three brothers, Habib, Jacob and Kameel, to impress a trust upon certain real and personal property standing in the names of their father, Alexander, and another brother, Samuel, based upon an alleged oral agreement made in 1912 between the father and the plaintiffs Habib and Jacob. The claim is made in face of the fact that in August, 1935, the father, the plaintiff brothers Jacob and Habib and another brother, the defendant Joseph, had executed separate declarations of trust showing for whom they held title to certain properties, which properties embraced all the properties here involved.

In a declaration of trust executed by the father and mother, as trustors, of which the father was the trustee, he declared he held the properties in trust for himself, his wife and his nine children. This particular declaration of trust embraced all the properties here involved except the following:

(A) 36 3/7 shares of stock (out of 85 shares of stock issued and outstanding) in Balian's Market, which were held as follows:

12 1/7 shares by the Jacob Balian Trust;

12 1/7 shares by the Habib Balian Trust; and

12 1/7 shares by the Joseph Balian Trust.

(B) 4 shares of stock (out of 12 shares issued and outstanding) in the Balian Ice Cream Company, Inc., were held by the Joseph Balian Trust, and 2 shares, which at the time were issued in blank, were held for plaintiff Habib.

At the time of the alleged oral agreement in 1912 there was no property which could be subject to the operation of the purported trust agreement, save the sum of $160 cash, the property of the father, which was shortly thereafter used for current expenses of the father's family. Over proper objection the trial court received testimony, not only as to the terms of the alleged oral agreement made in 1912, but that the plaintiffs had, in accordance with the terms of that agreement, turned over to their father in large part their earnings and the properties which they acquired throughout the years.

The terms of the agreement of 1912, as testified to by the plaintiffs, are as follows: That it was agreed between the father and the plaintiffs Habib and Jacob, who participated in the conversation, that all earnings of all the members of the Balian family should be placed in a common fund; that the title to all property acquired by the members of the family, individually or collectively, should be taken in the name of the father, or, if not thus taken, that it should nevertheless be held by the member acquiring it for the benefit of the family as a whole; that upon the death of the father the property was to be distributed to his children in equal shares; that any member of the family might elect, at any time, not to be bound by the terms of the agreement, in which event he was to receive his share of the property acquired up to that time; that the members of the family should have the right to declare the agreement inoperative as to any member of the family, and, if this were done, that the share in the common property of such member should be distributed and paid over to him.

Upon the trial, and as a part of the cross-examination of the plaintiffs, there were introduced three written declara-

tions of trust, one being that of the father, another that of the plaintiff Jacob, and the third that of the defendant brother, Samuel. It appears that in addition to these three declarations of trust six other written declarations were executed by the other members of the family, and that these likewise were made at about the same time in August, 1935. However, none of these six declarations was offered in evidence, but there was testimony sufficiently identifying them as having been made. It is likewise clear from the evidence that all nine written declarations were drafted in the law offices of one Hamilton, whose name and address is printed on the margin of each sheet of the three written declarations of trust which were offered in evidence.

The plaintiffs testified that the object in executing the written declarations of trust, all nine of which were recorded, was to prevent creditors of any member of the family from reaching properties the subject of the declarations, but that through an oral understanding which the plaintiffs had with their father at, prior and subsequent to the execution by him of his declaration he stated that, as between the members of the family, the various declarations should not be effective, and that all the members of the family were to be bound by the terms of the 1912 agreement. No authority on his part to bind any of the other members of the family was shown.

We shall not stop to summarize the testimony of the three plaintiffs, but instead shall content ourselves with setting forth what we consider to be particularly significant and necessary items of the testimony for our decision.

Plaintiff Jacob testified that in the 1912 conversation the father told him, in the presence of Habib, that he had given the latter the $160 cash which he had because he, being the oldest child, was to be the head of the family from that time onwards; that this original capital was thereafter expended for the current expenses of the family; that he (Jacob) established a grocery business in 1923 in his own name, on a lot owned by him at Inglewood, California; that when Balian's Market was incorporated in 1935 he received 12 1/7 shares of its capital stock, issued in the name of Jacob Balian Trust, which represented 1/7 of all the issued and outstanding stock.

Plaintiff Habib testified that he entered into the carpet cleaning business in New York in 1920 under the name of ''Balian's Carpet Cleaning Company''; that the verified certificate of ownership listed him as the sole owner; that he established a like business in California under the same name, and that the verified certificate listed him as the sole owner; that in making out his income tax returns as to these businesses he stated he was the sole owner; that in 1928 he established the Balian Ice Cream Company, filing a certificate of doing business in that name, in which it was stated that he was the sole owner; that at a time when his brother Abraham made claim to an interest in that business he had a conversation with his father in which the latter told him the business belonged solely to him (Habib) and that he should not give his brother Abraham any share in it; that later, when the father sued Habib to recover the ice cream business which then stood in Habib's name, he was induced to give his father a bill of sale and thereupon the action was dismissed; that at the time of the dismissal he executed a release showing he had no interest whatever in any property of his father. He further testified to a conversation with his father wherein he related to him that when a controversy arose some time prior with reference to the ice cream business he (the father) had told him when he originally started the business was to belong to him (Habib) and that it was not to be a family possession.

Plaintiff Kameel testified in a deposition, in a case where a creditor sought to reach his assets, that he had no property whatsoever; and by his answer in that case, made under oath, he averred that Balian's Market belonged solely to his father, and that neither he nor any of the other children owned any interest therein.

After a trial lasting approximately two weeks the court granted the motion of defendants for a nonsuit. The granting of this motion and the entry of judgment thereon are the only matters which are here assigned as error. As the motion is not set out in the record we are not informed of its grounds. In that connection it should be stated that on appeal a nonsuit will be sustained if it can be justified on any ground, whether or not such ground is stated in the motion or in the ruling. (*Anchester* v. *Keck,* 214 Cal. 707 [4 Pac. (2d) 934]; *Hanrahan-Wilcox Corp.* v. *Jenison Ma-*

*chinery Co.,* 23 Cal. App. (2d) 642 [73 Pac. (2d) 1241].)
Accordingly, under these authorities, it is immaterial that
we do not know the grounds urged in the motion for non-
suit.

The main contention of the appellants is that there
was sufficient evidence to establish an oral trust in their favor
based upon the evidence which they submitted of the alleged
conversation in 1912; and hence, even though the evidence
was disbelieved by the trial judge, he was not on a motion
for nonsuit entitled to weigh the evidence but should have
overruled the motion and required proof from the defendants.
In response to this contention of the plaintiffs the defendants
argue that on a motion for nonsuit the court is not required
to accept as true testimony which is inherently improbable;
and, further, that there was no relevant, substantial evi-
dence that would have justified the trial court in holding
a trust had been established. Moreover, they contend
that the plaintiffs are estopped from making any claim
under the alleged oral trust because of their conduct and
because the written declarations of trust merged all agree-
ments made prior thereto. In the view we take of the case
it will not be necessary to discuss in detail the respective
contentions of the parties. It will suffice to say there are
several reasons, in our opinion, why the ruling of the trial
court was correct.

First it is to be observed that when the alleged mutual
promises were exchanged in 1912 between the father and his
sons Habib and Jacob it was contemplated that all the chil-
dren of Alexander should be bound by the trust agreement.
At the time the only child who was of age and so competent
to enter into a contract was Habib, who was twenty-one.
The other six children ranged from nineteen years of age
down to Samuel, who was three years old. Joseph had not
yet been born. The oral trust agreement contained no pro-
visions as to the manner in which the father was to handle
any property acquired, nor any restrictions upon his dispos-
ing of all or any part of the property acquired during his
lifetime. The agreement merely provided that upon his
death the property remaining should all be distributed to
the children then surviving, without reference to the heirs
of any child that might have died and without regard to any
rights which the mother might have therein if she survived

her husband. Moreover, there was no property or *res* upon which the alleged trust could operate.

We think the terms of the trust agreement are altogether too uncertain and tenuous to have warranted the trial court impressing a trust on any of the property. The agreement of trust falls far short of measuring up to the rule laid down in *Lefrooth* v. *Prentice,* 202 Cal. 215 [259 Pac. 947]. There it is said [p. 227] that an express trust must be "reasonably certain in its material terms; and this requisite of certainty includes *the subject matter* or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interest they are to have and the manner in which the trust is to be performed." (Italics ours.) A most casual reading of the terms of the oral trust which we have outlined above discloses a complete failure to meet any of the requirements of the rule laid down in the Lefrooth case.

Moreover, "To the creation of a trust, a trust-*res* or subject matter is a *sine qua non*. . . . 'In order for trusts to exist there must be an estate to vest in the trustee, and the property must be clearly and definitely pointed out.'" (*In re Lamb,* 61 Cal. App. 321 [215 Pac. 109].) Here there was no property in the hands of the alleged trustee. The cash which the father had, totaling $160, had already been turned over to Habib. It never became a part of any trust estate but instead was consumed in living expenses. Accordingly we think that for want of a trust *res,* and because of the indefiniteness of the terms of the alleged trust agreement, the agreement was not enforceable and the motion for nonsuit was rightly sustained. In reaching such conclusion we are not unmindful of the rule that a nonsuit should only be granted when, "accepting the full force of the evidence adduced, together with every reasonable inference favorable to the plaintiff, which may be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes the plaintiff from recovering a judgment under such circumstances." (*Mastrangelo* v. *West Side etc. School District,* 2 Cal. (2d) 540, 544 [42 Pac. (2d) 634]; *Archer* v. *City of Los Angeles,* 19 Cal. (2d) 19 [119 Pac. (2d) 1].) It must be remembered, however, that the rules which are to be applied to motions for nonsuit "do not require courts to put themselves in incongruous positions in

order to hold a case in court. Courts will not give a strained or unnatural construction to language or conduct, or distort the orderly laws of sequences or the logic of a given situation to force an unnatural result." (*Anchester* v. *Keck,* 214 Cal. 207, 214 [4 Pac. (2d) 934].) Considering the case in the light of the foregoing rules it appears as a matter of law that the evidence is without sufficient substantiality (*Gish* v. *Los Angeles Railway Co.,* 13 Cal. (2d) 570 [90 Pac. (2d) 792]) to make out a *prima facie* case either as to the terms of the alleged trust or the existence of a *res* upon which such trust could operate.

The appeal purports to be from the judgment and from the order dissolving restraining orders and from the order denying the motion for new trial. The record does not disclose any orders of the character mentioned. At all events, an order denying a new trial is not appealable. Whether an order dissolving a restraining order is appealable or not (see *Palm Springs etc. Co.* v. *Kieberk Corp.,* 37 Cal. App. (2d) 642 [100 Pac. (2d) 346]) we need not here determine, as there is nothing in the record to indicate that such an order was made.

Accordingly, the appeals from the orders dissolving restraining orders and the order denying a new trial are dismissed and the judgment is affirmed.

Wood (W. J.), Acting P. J., and McComb, J., concurred.