Filed 4/28/21  DeVoid v. Broskowski CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANDREW DEVOID,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>MICHAEL BROSKOWSKI, as Trustee, etc.,<br><br>  Defendant and Respondent. | D077734<br><br><br>(Super. Ct. No. 37-2017-00005718 -PR-TR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Julia Craig Kelety, Judge.  Affirmed.

Law Offices of Barron E. Ramos and Barron E. Ramos for Plaintiff and Appellant.

Albence & Associates and David S. Pawlowski for Defendant and Respondent.

I

INTRODUCTION

Andrew DeVoid (Andrew) filed a petition under Probate Code section 850 requesting that his deceased grandparents' assets be transferred

from the Thorpe G. DeVoid Trust (the 2004 trust), which designates Andrew as a mere nominal beneficiary, to the Thorpe G. DeVoid and Lorraine O. DeVoid Revocable Living Trust dated August 10, 1990 (the 1990 trust).[1] No party or witness can produce a copy of the 1990 trust or has ever read it. However, Andrew claims the 1990 trust designates him as the sole beneficiary entitled to inherit the entire estate. In the probate proceeding below, Andrew attempted to prove the contents of the 1990 trust through testimony that his grandparents orally described the 1990 trust to himself and his mother before they passed away. The trial court found that Andrew failed to establish the material terms of the 1990 trust and denied his petition.

We affirm the order denying Andrew's petition.

II

BACKGROUND

A

In 1990, Thorpe G. DeVoid (Thorpe) and his wife Lorraine O. DeVoid (Lorraine) executed the 1990 trust. No one involved with this case can produce a copy of the 1990 trust or has ever read it. However, it is undisputed the 1990 trust was funded with community property acquired during Thorpe and Lorraine's decades-long marriage.

Lorraine executed a pour-over will in addition to the 1990 trust. The pour-over will governs the disposition of Lorraine's interests in community property not held in the 1990 trust, plus separate property in probate at the time of Lorraine's death. For those categories of property, the pour-over will leaves all personal property to Thorpe and the residue of Lorraine's estate to the 1990 trust "to be held, administered and distributed according to the

---

[1]    Undesignated statutory references are to the Probate Code.

2

terms of that trust and any amendments properly made to it, including amendments … made after [Lorraine's] death."

The pour-over will contains a pour-over savings provision which establishes a contingency trust. The pour-over savings provision states that in the event the disposition of Lorraine's assets becomes "inoperative, in whole or in part, whether because the [1990 trust] fails or has been revoked, or for any other reason," the terms of the 1990 trust will be incorporated by reference into the pour-over will and the residue of Lorraine's estate will be left "to the Trustee of the trust, to be held, administered and distributed according to its terms."

B

In 2003, Thorpe filed a petition in the trial court under section 3100 et seq. The petition requested an order: (1) transmuting all community property in the 1990 trust to Thorpe's separate property; and (2) finding that Lorraine lacked capacity to consent to the transmutation. It stated the community property assets consisted of the couple's primary residence, then valued at $475,000, and five bank accounts, then collectively valued at $86,500. According to the petition, Lorraine's mental faculties were deteriorating and transmutation was necessary to safeguard the trust property from medical liens. The court granted the petition, thus transmuting the community property in the 1990 trust to Thorpe's separate property.

When Thorpe filed the transmutation petition, he lodged, but did not file, a copy of the 1990 trust. The current court file for the transmutation proceeding does not contain a copy of the 1990 trust, presumably because the lodged copy of the 1990 trust was destroyed or returned to the parties when the transmutation proceeding concluded.

3

## C

In March 2004, Thorpe executed a revocation of declaration of trust, which purportedly revoked the 1990 trust. At or about the same time, he executed the 2004 trust, which he funded at least in part with the assets from the 1990 trust. The 2004 trust designated Broskowski, a friend of Thorpe and the respondent in this appeal, as trustee. The original distribution terms of the 2004 trust are not apparent from the record but are not pertinent to the appeal because, as will be discussed, the 2004 trust was later amended and restated.

In December 2004, Lorraine passed away.

In March 2006, David DeVoid (David), Thorpe and Lorraine's only child, passed away. David was survived by Andrew, David's only child and Thorpe and Lorraine's only grandchild.

After David's death, Thorpe amended and restated the 2004 trust twice. The operative version of the 2004 trust provides that Andrew will receive $2,000 after Thorpe's death and the remainder of Thorpe's estate will be distributed to Broskowski.

In August 2015, Thorpe passed away. After Thorpe's death, Broskowski liquidated much of Thorpe's estate.

## D

In February 2017, Andrew filed a petition under section 850 requesting a transfer of assets from the 2004 trust to the 1990 trust or the contingency trust referenced in Lorraine's pour-over will. He also requested he be appointed trustee of the 1990 trust or the contingency trust.[2]

---

[2] For clarity, we note the section 850 petition should have sought the transfer of assets from the *trustee* of the 1990 trust to the *trustee* of the contingency trust.

4

Andrew alleged the transfer was warranted because he never received statutorily-mandated notice of the transmutation proceeding in 2003. According to Andrew, the failure to provide him notice rendered the transmutation order void and required that the transmuted property be transferred back to the 1990 trust or, to the extent Thorpe validly revoked the 1990 trust, to the contingency trust set forth in Lorraine's pour-over will.[3] Andrew stated he was unable to obtain a copy of the 1990 trust. However, he described its alleged contents as follows: "The 1990 trust was to provide for the surviving spouse with the remainder to flow to Thorpe and Lori's only child. [sic] David DeVoid (David), then to Petitioner Andrew DeVoid should David predecease Thorpe and Lori."

During the hearing on Andrew's petition, the court received testimony from three witnesses—Andrew, Andrew's mother, and Broskowski. Andrew testified he never saw the 1990 trust, but he claimed he had a conversation with Thorpe regarding the 1990 trust in or about 2000 or 2002, when Andrew was a child. According to Andrew, Thorpe told him the 1990 trust was funded with "[e]verything they owned. ... their whole livelihood," and Thorpe gave him a "very rough" understanding the assets were to be distributed as follows: "[I]f [Lorraine died], it was to go to [Thorpe]. And then if he were to die, it would go to [David]. And then from [David] to [Andrew] at the age of 25." Additionally, Andrew testified he did not receive notice of the transmutation proceeding.

---

[3] The petition broadly requested a transfer of all of the "assets currently held by the 2004 Trust," not merely the share of the community property that belonged to Lorraine prior to the transmutation order. In subsequent filings, Andrew stated he sought a transfer only of the share of the community property that belonged to Lorraine, which he valued at $280,750.

5

Andrew's mother testified she never saw the 1990 trust, but she had a conversation with Lorraine regarding the 1990 trust during which Lorraine stated that "if anything happened to [David], then Andrew would be notified because he [was] to get the trust at 25." She testified she also had "sporadic" conversations with Thorpe regarding the 1990 trust, "probably over 10, 15, 20" of them in total. According to Andrew's mother, she understood from these conversations that the 1990 trust was funded with "[e]verything they owned, the house, all their belongings," and the property would be disposed of as follows: "David[] would be the sole owner of the trust... the heir to the trust. And if anything happened to him ... Andrew would get the trust ... when he turned 25."

Broskowski testified he never saw the 1990 trust and had no discussions with Thorpe or Lorraine about the 1990 trust.

After the hearing, the trial court denied the section 850 petition. It found Andrew was statutorily entitled to receive notice of the transmutation proceeding, which he did not receive. But it found the failure to give such notice did not render the transmutation order void or voidable.

On appeal, a divided panel of this court determined the failure to provide Andrew notice of the transmutation hearing rendered the transmutation order void. (*DeVoid v. Broskowski* (June 13, 2019, D073988) [nonpub. opn.].) On that basis, we reversed the order denying the section 850 petition and remanded the matter for further proceedings. (*Ibid.*)

E

On remand, the trial court ordered the parties to file trial or deposition testimony concerning the terms of the 1990 trust.

Broskowski filed a brief to which he attached the trial testimony previously discussed as well as excerpts from depositions of Andrew and his

6

mother. During his deposition, Andrew stated he understood the property in the 1990 trust "was supposed to stay in the family" based on his 2000 or 2002 conversation with Thorpe. He added that he also had a conversation with Thorpe in 2014, during which Thorpe stated Andrew "would be well provided for in his trust." Andrew stated he "didn't know specifics" about the trust. Further, he stated Thorpe and Lorraine never told him whether the 1990 trust was revocable or whether they reserved the right to change their minds regarding the disposition of their assets.

In her deposition, Andrew's mother stated she had a conversation with Thorpe in 2010 or 2011, during which he stated Andrew would be "well taken care of." She stated she never saw the 1990 trust, there was "not a lot of detail" concerning whether the 1990 trust was revocable, and she never had a conversation with Thorpe or Lorraine regarding whether they could change the beneficiaries of their estates.

It is unclear from the appellate record whether Andrew filed a brief or submitted any testimony concerning the terms of the 1990 trust.

After a hearing, the trial court denied Andrew's section 850 petition. Although there was no copy of the 1990 trust, the court found that it was "certain of one term of the 1990 trust," namely that it permitted Thorpe to revoke the trust insofar as it disposed of his own share of the community property. The court cited the following evidence in support of its finding: (1) the title of the 1990 trust included the adjective revocable in it; (2) in March 2004, Thorpe executed a revocation of declaration of trust that purported to revoke the 1990 trust; and (3) in the section 850 petition, Andrew described the 1990 trust as revocable. Based on this finding, the court denied the petition to the extent it sought a transfer of Thorpe's portion of the community property.

7

Concerning the disposition of Lorraine's portion of the community property, the court framed its role in the following terms: "[T]his court concludes that the task before it as to Lorraine's share is to consider the extrinsic evidence; and then to determine whether such evidence establishes Lorraine's testamentary intent by clear and convincing evidence." The court noted that Andrew and his mother had not read the 1990 trust and admitted they lacked specifics and details about it. The court then found that "[w]ithout those specific details, [it] was left to speculate and to create out of whole cloth the distribution scheme under the [1990] Trust."

The court noted, for example, that there are several types of trusts married persons can establish for estate planning purposes, including dynasty trusts, A/B split trusts, revocable living trusts, and disclaimer trusts. The court opined that Andrew might be a beneficiary entitled to inherit under some of these types of trusts, but not others. Further, the court found that Andrew might not be entitled to inherit anything under the 1990 trust if it contained other common trust provisions, such as a power of appointment. Given these myriad possibilities, the court found it was "not possible for the court to conclude that Andrew inherited all or part of Lorraine's share under the 1990 trust, either by clear and convincing evidence or some lesser standard. … [Andrew's] recollection that the trust would stay 'in the family' [was] inadequate to fill in the gaps of the missing estate plan."

The court also rejected Andrew's contention that Lorraine's portion of the community property should be transferred to the contingency trust referenced in Lorraine's pour-over will. In relevant part, the court reasoned as follows: "[T]he court has insufficient evidence to ascertain what the terms of this 'contingency trust' would be. If the court cannot determine the terms

8

of the 1990 trust, it is in no better position to determine the terms of the contingency trust under the pour[-]over will."

Because the trial court was unable to determine the terms of the 1990 trust or the contingency trust, it found the residue of Lorraine's estate passed upon Lorraine's death to Thorpe by intestacy. The court reasoned that because the assets "belonged to Thorpe through intestacy," he "was free to create his own estate plan thereafter, and he did so." On these grounds, the court denied Andrew's petition in its entirety.

## III

## DISCUSSION

### A

### *Standard of Review*

The trial court's order is presumed to be correct and Andrew, as the appellant, bears the burden of establishing error. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) If the order is correct under any theory, we "will affirm it regardless of the trial court's reasoning." (*Young v. Fish and Game Com.* (2018) 24 Cal.App.5th 1178, 1192–1193.)

We apply de novo review to questions of law and mixed questions of law and fact where legal issues predominate. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.) We review for substantial evidence questions of fact and mixed questions of law and fact where application of the law is essentially factual in nature. (*Estate of Teel* (1944) 25 Cal.2d 520, 526–527; *Harustak*, at p. 213.) Where the trial court made no express findings on disputed issues of fact, "we infer that it made every implied factual finding necessary to support its order and review those implied findings for substantial evidence." (*Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 708 (*Chin*).) Where the issue on appeal turns on

9

a failure of proof at trial, we ask " 'whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.)

B

*Section 850*

Andrew filed the petition at issue under section 850. Section 850 states in relevant part that an interested party may file a petition "[w]here [a] trustee is in possession of, or holds title to, real or personal property, and the property, or some interest, is claimed to belong to another." (§ 850, subd. (a)(3)(A).) A petitioner under section 850 is entitled to discovery from interested persons. (§§ 851, subd. (a), 851.1.) If, after a hearing, the court is "satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing … the person having title to or possession of the property[] to execute a conveyance or transfer to the person entitled thereto, or granting other appropriate relief." (§ 856.) This statutory scheme "provides the probate court with a mechanism to determine rights in property belonging to a decedent or to someone else." (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 117–118.)

As the petitioner, Andrew bore the burden of establishing that the assets held by the trustee of the 2004 trust belonged to someone else. (See *Estate of Della Sala* (1999) 73 Cal.App.4th 463, 469–470 ["Issues of fact in probate proceedings are to be tried in conformity with the rules of practice in civil actions. [Citation.] A party in a civil action has the burden of proof as to

10

each fact essential to his claim for relief."]; Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."].) In particular, he bore the burden of establishing that the assets should be transferred to the trustee of the 1990 trust or the trustee of the contingency trust.

## C

### *The Trial Court Did Not Err in Denying the Petition*

Andrew urges us to reverse the trial court's order for two alternative reasons. First, he contends Thorpe had no authority to revoke the 1990 trust insofar as it disposed of Lorraine's share of the community property. Under this theory, Andrew argues that Lorraine's share of the community property must be transferred to the 1990 trust. In the alternative, Andrew claims that to the extent Thorpe validly revoked the 1990 trust, the contingency trust referenced in Lorraine's pour-over will kicked in and governed the disposition of her share of the community property. Under this theory, Andrew asserts that Lorraine's share of the community property must be transferred to the contingency trust.[4]

The trial court declined to transfer the property at issue to either the trustee of the 1990 trust or the trustee of the contingency trust, finding that Andrew did not establish the terms of those trusts by any standard of proof. Because the material terms of the trusts were uncertain, the court concluded Lorraine's share of the community property passed to Thorpe through intestacy upon her death, at which point Thorpe was permitted to dispose of the property as he desired. As we will explain, the court did not err in

---

[4]    Andrew does not contend the trial court erred in denying the petition to the extent it sought a transfer of Thorpe's share of the community property.

finding the 1990 trust and the contingency trust were void for uncertainty or in finding the property at issue passed to Thorpe upon Lorraine's death.

"The essential necessary elements of a valid trust are (1) a trust intent (§ 15201); (2) trust property (§ 15202); (3) trust purpose (§ 15203); and (4) a beneficiary (§ 15205)." (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 164.) No particular language or terminology is necessary to establish a trust. (*Higgins v. Higgins* (2017) 11 Cal.App.5th 648, 661.) However, a trust " 'must be reasonably certain in its material terms ….' " (*Lefrooth v. Prentice* (1927) 202 Cal. 215, 227; *Reagh v. Kelley* (1970) 10 Cal.App.3d 1082, 1089 [a "declaration [of trust] must be reasonably certain in its terms"]; 60 Cal. Jur. 3d Trusts § 22 ["all express trusts, whether written or oral, must be reasonably certain in their material terms"].) If a settlor intends to create a trust, but the trust's material terms are not sufficiently certain, the trust fails and the property at issue becomes part of the residuary estate or passes by the laws of intestacy. (*Estate of Reed* (1947) 82 Cal.App.2d 448, 449–450; *In re Estate of Maloney* (1938) 27 Cal.App.2d 332, 333–334.)

In the present case, Andrew did not present the court with a copy of the 1990 trust. Therefore, the only evidence concerning the terms of the 1990 trust (and by proxy, the identical contingency trust) was the testimony of Andrew and his mother. Extrinsic evidence is admissible to prove the contents of a missing or lost donative instrument. (*Estate of Duke* (2015) 61 Cal.4th 871, 888.) However, the court was under no duty to accept as true the factual findings that Andrew hoped his extrinsic evidence would establish. " 'The trial court [is] the trier of fact and the sole judge of the credibility of witnesses.' " (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 106.) " '[S]o long as the trier of fact does not act arbitrarily and has a rational ground for doing so, it may reject the testimony of a witness *even though the*

12

*witness is uncontradicted.'* " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 422, italics added; *Hicks v. Reis* (1943) 21 Cal.2d 654, 659–660 ["Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted."].)

The trial court did not expressly credit or discredit the testimony of Andrew or his mother. However, we can assume for purposes of this appeal that the court rendered implied findings that the witnesses' testimony was not credible and, on that basis, that the witnesses failed to establish the material terms of the 1990 trust or the identical contingency trust. (See *Chin, supra*, 194 Cal.App.4th at p. 708.) The court's implied findings on these disputed issues were neither irrational nor unreasonable.[5]

The court could rationally find, for instance, that the witnesses were not credible because they were motivated by a personal desire for Andrew to inherit the entirety of his grandparents' estate. (See *Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579 [" ' "In passing on the credibility of witnesses and the weight to be given their testimony, the trier of fact is entitled to consider their interest in the result of the case[] [and] their motives ...." ' "].) Further, Andrew was a young child when he purportedly spoke with Thorpe about the 1990 trust. In fact, by Andrew's admission, he did not know what a

_____

[5]     Andrew asserts there was no dispute regarding witness credibility or any factual issue. The record reflects otherwise. In the proceeding below, Andrew argued his testimony and his mother's testimony proved he was the sole beneficiary under the 1990 trust. By contrast, Broskowski argued there was a "lack of any credible evidence [with] respect to any of the 1990 trust terms," Thorpe's alleged statements to Andrew about the 1990 trust should not be believed because Thorpe had "no inclination to tell Andrew the truth," "[t]here was not a single witness that [could] competently testify as to any of the 1990 trust provisions," and the "testimony purporting to establish the terms of the 1990 trust [was] meaningless." Clearly, there were disputes about witness credibility and the terms of the 1990 trust.

trust or a trustee was at the time of his alleged conversation with Thorpe. The trial court could reasonably discredit Andrew's testimony based on his age and admitted lack of knowledge at the time of his alleged conversation with Thorpe. Because the court could rationally discredit the witnesses' testimony, the court could properly conclude their testimony did not establish the material provisions of the 1990 trust or the contingency trust.

Alternatively, the court could rationally find that Thorpe and Lorraine did not accurately summarize the contents of the 1990 trust to Andrew or his mother. Indeed, Andrew's testimony suggested that Thorpe at times misstated the contents of the donative instruments governing the disposition of his estate. For instance, Andrew testified that Thorpe told him the 1990 trust disposed of "[e]verything they owned." But as Andrew admits, the 1990 trust did not dispose of *everything* Thorpe and Lorraine owned; it disposed only of their community property. Further, Andrew testified that Thorpe once told him he "would be well provided for in his trust." But by the time that conversation allegedly took place, Thorpe had already revoked the 1990 trust and executed the 2004 trust, which designated Andrew as a mere nominal beneficiary. Based on these discrepancies, the court reasonably could find that Thorpe and Lorraine did not accurately convey the material terms of the 1990 trust to Andrew or his mother. In the absence of reasonable certainty concerning the material terms of the 1990 trust or the contingency trust, the trial court properly found the trusts void.

Even if the trial court believed that Andrew and his mother were credible witnesses and that Thorpe and Lorraine accurately described the 1990 trust to them, we still would conclude that the court did not err in finding the trusts uncertain. Andrew testified he "didn't know specifics" about the 1990 trust, never spoke with his grandparents about the

14

revocability of the 1990 trust, and had only a "very rough" understanding the estate would go to David and then to him at the age of 25. Andrew's mother provided similarly vague testimony that David would be the trust "owner" or "heir to the trust," and she admitted she was likewise unaware of whether the trust was revocable. Further, neither witness testified about the form of the trust, the duties or obligations the trust imposed on the trustee, the precise assets constituting the trust property, or the distribution scheme in any number of circumstances that might have arisen (if, for example, Thorpe predeceased Lorraine, David predeceased Thorpe and/or Lorraine, or Andrew predeceased Thorpe, Lorraine, and/or David). Based on these uncertainties, we conclude the court did not err in finding that Andrew failed to establish the material terms of the 1990 trust or the contingency trust. (See *Balian v. Balian's Market* (1941) 48 Cal.App.2d 150, 156, 155–156 [alleged oral trust was void because it was "altogether too uncertain and tenuous"].)

Because the trial court did not err in finding that Andrew failed to establish the material terms of the 1990 trust or the contingency trust, the court properly ruled that those trusts failed for uncertainty. Therefore, Lorraine's share of the community property passed to Thorpe in accordance with the residuary clause of her pour-over will or, to the extent the residuary clause did not encompass the community property at issue, through intestacy (§ 6401, subd. (a)). In either case, the property went to Thorpe, who could dispose of it as he saw fit. He did so pursuant to the 2004 trust.

## IV

## DISPOSITION

The order is affirmed. Broskowski is entitled to his costs on appeal.

McCONNELL, P. J.

WE CONCUR:


IRION, J.


DATO, J.